COMMONWEALTH of Pennsylvania,
Appellee,

v.

Gregory SHAMBERGER, Appellant.

Superior Court of Pennsylvania.

Argued May 3, 2001.

Filed Dec. 7, 2001.

William R. McElroy, Hatboro, for appellant.

Mary M. Killinger, Assistant District Attorney, Norristown, for Com., appellee.

BEFORE: DEL SOLE, President Judge, CAVANAUGH, J., McEWEN, President Judge Emeritus, JOHNSON, JOYCE, STEVENS, MUSMANNO, LALLY–GREEN, and TODD, JJ.

TODD, J.:

◼ ¶ 1 Gregory Shamberger appeals [1] the judgment of sentence [2] of 25 months to 10 years imprisonment imposed after a jury convicted him of one count each of theft, attempted theft, and unsworn falsification to authorities, and three counts of forgery.[3] Appellant's convictions arose out of the theft of items from handbags that theater patrons had placed on the floor of the theater while they were watching movies. We granted *en banc* review to consider a question of first impression in the Commonwealth, whether Appellant's theft convictions properly were graded for sentencing purposes misdemeanors of the first degree as thefts "from the person" under 18 Pa.C.S.A. § 3903(b). Upon review, we conclude that theft from the person under Section 3903(b) includes not only theft from the victim's body, but also theft in the victim's presence and from his immediate possession and control. Accordingly, we affirm.

¶ 2 The evidence presented at trial established that in June 1998, Linda Reese

---

1. This appeal originally was argued before a panel of this Court that issued a memorandum decision affirming Shamberger's convictions, but vacating his sentences and remanding for resentencing. Upon the Commonwealth's motion, we granted reargument before the Court *en banc*.

2. We note that Appellant purported to appeal the October 26, 1999 Order of the trial court denying his post-sentence motions. In a

criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions. *See Commonwealth v. Chamberlain*, 442 Pa.Super. 12, 658 A.2d 395, 397 (1995). We have corrected the caption accordingly.

3. 18 Pa.C.S.A. §§ 3921(a), 901, 4904, and 4101, respectively.

attended a movie with her husband at a theater at the Regal Cinemas complex in Plymouth Township. The couple sat in the back of a nearly empty theater. Reese placed her purse, which had been zipped closed, on the floor of the theater and placed the strap over the arm of her seat, keeping her hand on the strap. During the movie, Reese observed a man, who later was identified as Shamberger, climb over a row of seats and sit behind her. As she was preparing to leave the theater after the movie, Reese noticed that her purse had been opened and her wallet had been removed from her purse. Reese located the wallet on the floor under the seat next to hers with some of its contents spilled on the floor. Three credit cards and $40 in cash had been taken from Reese's wallet and unauthorized charges totaling approximately $200 later appeared on her credit card statement. Reese reported the incident to theater management and made a report to the police.

¶ 3 In late August 1998, Christina Geiser attended a movie by herself at the Regal Cinemas. Like Reese, Geiser sat in the back of a nearly empty theater and placed her handbag on the floor next to, but not touching, her foot. During the movie, she heard a noise and turned to see someone sit down behind her. At the end of the movie, she noticed that the person no longer was sitting behind her. Subsequently, she discovered that her money and three credit cards were missing from her wallet and that unauthorized charges in excess of $1,000 had been made on one of her missing credit cards. Geiser filed a police report regarding the theft.

¶ 4 In September 1998, Sueann Hedgepath had a similar experience while attending a movie at the same theater complex. Hedgepath, who also was alone, chose a seat near the rear of the almost-empty theater and placed her handbag on the floor. Shortly after the movie started, Hedgepath noticed Appellant repeatedly enter and leave the theater, eventually sitting behind her. Before the movie ended, Hedgepath heard a noise and observed Appellant leaving the theater. She immediately checked her purse and discovered that her wallet was missing. She quickly left the theater and observed Appellant entering the men's room in the lobby. Hedgepath alerted theater personnel who advised her to contact the police. The police arrived and arrested Appellant after Hedgepath identified him. The police located Hedgepath's wallet, its contents intact, under the row of seats behind the row in which she had been sitting.

¶ 5 One of the officers who responded to Hedgepath's call was Thomas R. Marinello of the Plymouth Township Police Department. Upon entering the lobby of the theater, Officer Marinello recognized Appellant as the man that he had stopped for vehicle code violations in the parking lot of the Regal Cinema on August 28, the day that Christina Geiser's cash and credit cards had been stolen. On that date, Appellant, who did not produce his driver's license or other identification, told Officer Marinello that his name was Kevin Price, and Officer Marinello issued two citations to Appellant under that name. At the conclusion of their encounter, Officer Marinello observed Appellant enter the Regal Cinema.

¶ 6 Upon his arrest on September 11, Appellant again identified himself to the police as Kevin Price and signed three fingerprint cards using that name. On September 14, another officer who had responded to Hedgepath's call, Detective Jeffery McGee, interviewed Karreem Alston, an usher at the Regal Cinema. Alston positively identified Appellant from a photo array and told Detective McGee that he had noticed Appellant going in and out

of theaters on June 17, the day that Karen Reese's credit cards were stolen.

¶ 7 Appellant was tried before a jury on charges arising out of the theft from Christina Geiser, the attempted theft from Sueann Hedgepath, his provision of a fictitious name to Officer Marinello, and his signature of a fictitious name on the three fingerprint cards.[4] Prior to closing arguments during Appellant's trial, Appellant's counsel stipulated that the theft offenses properly should be graded as first-degree misdemeanors.

¶ 8 Following his sentencing by the Honorable William R. Carpenter, Appellant sought to challenge his conviction on several grounds, including allegations that he had received ineffective assistance of counsel. The trial court accordingly appointed new counsel who filed post-trial motions, which were denied following a hearing. This timely appeal followed.

¶ 9 Appellant raises eight issues for our consideration.

I. Did the trial court err by allowing the prosecution to present evidence of a June 17, 1998 theft, to prove the intent and identity of the defendant at two subsequent thefts[?]

II. Was the evidence insufficient to convict Mr. Shamberger of the three forgery charges[?]

III. Did the trial court err in his instruction to the jury on the charge of forgery[?]

IV. Was trial counsel ineffective for failing to raise the issue that the defendant was not properly advised in the bills of information that he would have to answer to a charge of theft: property taken from the person[?]

V. Was the evidence insufficient to convict Mr. Shamberger of the two misdemeanor one theft charges, to wit: property taken from the person[?]

VI. Was trial counsel ineffective for failing to object to the trial courts [sic] instruction to the jury which ignored an element of the theft offense, to wit: items were taken from the person[?]

VII. Was trial counsel ineffective for agreeing to stipulate as a matter of fact and matter of law, that the theft charges were graded as misdemeanor ones because the items taken from the victims were removed from the victims [sic] person[?]

VIII. Did the trial court imposed [sic] an illegal sentence on Mr. Shamberger to the theft convictions, which should be graded as third degree misdemeanors[?]

(Appellant's Brief, at 2.) Obviously, we need not reach an issue regarding sentencing if we were to find in Appellant's favor on any of his other claims. Thus, we will address the other issues first, albeit not in the order presented by Appellant.

■ ¶ 10 We first address Appellant's claims regarding the sufficiency of the evidence, the second and fourth issues raised by Appellant, because if he succeeds on these claims, we need not address his other contentions. In reviewing the sufficiency of the evidence, this Court must consider "whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner and drawing all proper inferences favorable to the Commonwealth, the trier of fact could have determined all the elements of the crime have been established beyond a reasonable doubt." *Commonwealth v. Hagan*, 539 Pa. 609, 613, 654 A.2d 541, 543 (1995).

---

4. Summary offense charges against Shamberger based on vehicle code violations on August 28 did not go to the jury. Charges against Appellant arising out of the theft from Linda Reese were dropped prior to trial.

■ ¶ 11 Appellant argues that the evidence was insufficient to support his theft convictions because:

In order to convict the defendant of theft, and attempted theft of property from the person (misdemeanors of the first degree no matter what the value of the property), the Commonwealth is required to prove that the items taken were "from the person". The evidence presented fails to sufficiently meet this burden.

(Appellant's Brief, at 14.) Appellant's argument is misplaced. Appellant was charged with theft by unlawful taking. According to the Crimes Code, theft by unlawful taking or disposition is defined as:

(a) **Movable property.**—A person is guilty of theft if he unlawfully takes, or exercises unlawful control over, movable property of another with intent to deprive him thereof.

18 Pa.C.S.A. § 3921(a). The evidence set forth above, if believed by the jury, clearly was sufficient to establish that Appellant took and attempted to take property of others with the intent to deprive them thereof.

■ ¶ 12 Whether the property was taken "from the person" is not, as Appellant argues, an element of this offense under the Crimes Code. *See Commonwealth v. Sparks,* 342 Pa.Super. 202, 211, 492 A.2d 720, 724 (1985). Instead, this is a factor in grading the offense for sentencing purposes pursuant to 18 Pa.C.S.A. § 3903. Appellant's argument regarding the propriety of the grading will be considered below, but it is clear that his challenge to the sufficiency of the evidence supporting his theft convictions is meritless.

¶ 13 Appellant similarly argues that the evidence was insufficient to support his convictions for forgery. Under the Crimes Code, a person commits forgery if, "with intent to defraud or injure anyone" he "makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act. ..." 18 Pa.C.S.A. § 4101(a)(2). The evidence at trial showed that after his arrest Appellant signed three fingerprint cards with the fictitious name Kevin Price.

¶ 14 Appellant argues that this evidence is insufficient to support his forgery convictions because the Commonwealth failed to prove "that the writing **standing alone** injured the police or deprived them of property." (Appellant's Brief, at 8 (emphasis original).) Appellant's argument is devoid of merit.

■ ¶ 15 By its plain language, the statute requires only that the act be committed with "intent to defraud or injure", not that the defendant have succeeded in his endeavor. *See Commonwealth v. Sheaffer,* 149 Pa.Super. 51, 57, 23 A.2d 215, 219 (1941). Moreover, the law is settled that forgery is not limited to actions that prejudice the pecuniary or property rights of another, *Commonwealth v. Green,* 205 Pa.Super. 539, 543–44, 211 A.2d 5, 8 (1965), and that proof that one signed a fictitious name with intent to defraud is sufficient to support a conviction for forgery. *Id.* at 544, 211 A.2d at 8. *Accord Commonwealth v. Zabala,* 303 Pa.Super. 72, 82, 449 A.2d 583, 588 (1982). Accordingly, we hold that Appellant's signature of a fictitious name on three fingerprint cards was sufficient to support his convictions for forgery.[5]

5. We note that several other states have reached the same conclusion. *See e.g. People v. Thomas,* 273 A.D.2d 606, 712 N.Y.S.2d 640 (N.Y.App.Div.) *app. denied,* 95 N.Y.2d 872, 715 N.Y.S.2d 227, 738 N.E.2d 375 (2000); *Thornton v. Indiana,* 636 N.E.2d 140 (Ind.Ct. App.1994).

¶ 16 For these reasons, Appellant's third argument, that the trial court's instruction to the jury on the forgery charges was erroneous because it was "too broad in it's [sic] meaning" and included "conduct beyond depriving someone of their property" (Appellant's Brief, at 10), fails as well. Moreover, we have reviewed the trial court's forgery instruction in its entirety and conclude that it sufficiently and accurately set forth the appropriate principles of law. *See Commonwealth v. Miller,* 560 Pa. 500, 523, 746 A.2d 592, 604 (2000) ("It is axiomatic that a jury charge must be read as a whole to determine whether it is fair or prejudicial and that the trial court has broad discretion in phrasing its instructions so long as the law is clearly, adequately and accurately presented to the jury."). Thus, Appellant is not entitled to a new trial on the basis that the evidence was insufficient to support either his theft or forgery convictions, or that the trial court's jury instructions regarding forgery were erroneous.

¶ 17 Appellant next asks us to consider whether the trial court erred in permitting the introduction of evidence of a crime other than the ones for which he was on trial, specifically the theft from Linda Reese. At trial, the Commonwealth introduced the testimony of Reese and of Karreem Alston, the theater employee who identified Appellant as the person who had been going into and out of theaters within the Regal Cinema complex on the day that Reese's cash and credit cards were taken from her wallet. Appellant argues that this evidence improperly was admitted and was prejudicial and that he therefore is entitled to a new trial. We disagree.

■ ¶ 18 It is well settled that evidence of prior crimes generally is not admissible against a criminal defendant, subject to certain exceptions. *Commonwealth v. Murphy,* 540 Pa. 318, 328, 657 A.2d 927,

982 (1995). *See also* Pa.R.E. 404(b). However, evidence of other crimes may properly be introduced to prove motive, intent, absence of mistake or accident, or a common scheme, plan or design. *Murphy,* 540 Pa. at 328, 657 A.2d at 932 In addition, such evidence is admissible "to establish the identity of the person charged with the commission of the crime on trial—in other words, where there is such a logical connection between the crimes that proof of one will naturally tend to show that the accused is the person who committed the other." *Id.* (citations omitted). To be admissible under this exception, however, the evidence's probative value must outweigh its prejudicial impact. *Commonwealth v. Echevarria,* 394 Pa.Super. 261, 267, 575 A.2d 620, 623 (1990).

■ ¶ 19 In the present case, the trial court held that evidence of the incident on June 17 was admissible "to establish Appellant's intent and identity with regard to the offenses committed on August 28 and September 11." (Trial Court Opinion, 1/11/00, at 8.) Specifically, the trial court noted that:

Prior to trial, the Prosecution stated it intended to show that the Appellant, during the June 17 incident, employed a strategy similar to the one used during the commission of the theft and attempted theft offenses at issue. That strategy, according to the Prosecution, included visiting the same movie complex in Plymouth, scoping out a relatively empty auditorium, sitting behind a woman, maneuvering in such a way as to remove the woman's wallet from her purse, taking credit cards from the wallet and returning the wallet to the purse before the woman was any wiser. Moreover, the Prosecution noted that if the Appellant was planning to offer an innocent bystander defense, the evidence of the prior bad act would be extremely rele-

vant to establish his identity as the person who committed the crimes charged. (*Id.*)

¶ 20 Given the unusual nature of the crimes charged, the trial court concluded that the probative value of this evidence outweighed its prejudicial impact. We agree. Moreover, we note that the trial court properly instructed the jury as to the limited purpose for which this testimony had been admitted. (N.T. Trial, 4/9/99, at 173–4.) Accordingly, Appellant's request for a new trial on this basis must fail as well.

¶ 21 Appellant's final four allegations of error are interrelated. As discussed above, Appellant's trial counsel stipulated that the theft offenses be graded as first-degree misdemeanors. (*Id.,* at 152–56.) The trial judge stated in his discussion with counsel regarding this stipulation that this grading was appropriate as a theft "from the person" under 18 Pa.C.S.A. § 3903. He also told counsel that such a stipulation removed the possibility of the jury grading the offenses as a third-degree felony, depending on the jury's assessment of the value of the stolen credit cards. (N.T. Trial, 4/9/99, at 152–53.)

¶ 22 Shamberger argues that his trial counsel was ineffective for agreeing to the stipulation and for failing to object to the jury charge on theft. Appellant also argues that his counsel was ineffective for "failing to raise the issue that the defendant was not properly advised in the bills of information that he would have to answer to a charge of theft: property taken from the person." (Appellant's Brief, at 2.) Finally, Shamberger argues that his sentence was illegal because pursuant to the stipulations, his theft convictions improperly were graded as first-degree misdemeanors, rather than third-degree misdemeanors.

¶ 23 To prevail on a claim of ineffectiveness of counsel, an appellant "must demonstrate (1) that the underlying claim is of arguable merit; (2) that counsel's course of conduct was without a reasonable basis designed to effectuate his client's interest; and (3) that he was prejudiced by counsel's ineffectiveness." *Commonwealth v. Wallace,* 555 Pa. 397, 407, 724 A.2d 916, 921 (1999). It is appellant's burden to prove all three prongs of this standard. *Commonwealth v. Travaglia,* 541 Pa. 108, 118, 661 A.2d 352, 357 (1995). To sustain a claim of ineffectiveness, counsel's approach must be "so unreasonable that no competent lawyer would have chosen it." *Commonwealth v. Miller,* 494 Pa. 229, 233, 431 A.2d 233, 234 (1981). Further, if it is clear that: an appellant has failed to meet the prejudice prong, the claim may be dismissed on that basis alone. *Travaglia,* 541 Pa. at 118, 661 A.2d at 357.

¶ 24 Appellant's ability to prevail on any of these claims hinges on our determination of whether theft "from the person" requires that property be removed from the actual body of the victim. This is a case of first impression in Pennsylvania. In examining this provision, we are mindful that:

all penal provisions should be strictly construed, and that where an ambiguity exists in the language employed by the legislature in a penal statute, it should be interpreted in a light most favorable to the criminally accused. While strict construction of penal statutes is required, however, courts are not required to give words of a criminal statute their narrowest meaning or disregard evident legislative intent. Indeed, it is a clear principle of our jurisprudence that where a statute is unclear on its face, resort must be taken to the intent of the General Assembly in enacting the provi-

sion, paying heed to such matters as the occasion and necessity for the statute, the circumstances underlying its enactment, the mischief to be remedied, and the object to be obtained. Moreover, the legislature is presumed, in drafting the statute, not to have intended a result which is absurd.

*Commonwealth v. Wooten,* 519 Pa. 45, 53, 545 A.2d 876, 879–80 (1988) (citations omitted). In *Wooten,* for example, our Supreme Court construed the mandatory sentencing provision as then set forth in 42 Pa.C.S.A. § 9712(a), as applicable to offenses committed when the defendant "visibly possessed a firearm during the commission of the offense." [6] *Id.* at 47, 545 A.2d at 877. At issue in that case was whether this provision applied in a situation where the defendant was convicted of voluntary manslaughter in the shooting of the victim, but no witnesses testified to having actually seen the defendant with the weapon. *Id.* After noting that the defendant had "proffered no societal goal which would be furthered by ... a restrictive construction", the Court held that to the contrary, to interpret the statute "to include offenses perpetrated with a firearm where the firearm manifests itself in the commission of the offense ... dovetails with the legislative purpose behind the minimum sentence mandate." *Id.* at 54, 545 A.2d at 880.

¶ 25 While the construction of the phrase "from the person" relative to the grading of a theft offense is an issue of first impression, this Court has had occasion to comment on the proper construction of this phrase as it pertains to the definition of robbery under 18 Pa.C.S.A. § 3701(a)(v). *Commonwealth v. Moore,* 343 Pa.Super. 242, 494 A.2d 447 (1985). In *Moore,* this Court stated that this Section, which states that a robbery occurs, *inter*

*alia,* when in the course of committing a theft, the perpetrator "physically takes or removes property from the person of another by force however slight", 18 Pa. C.S.A. § 3701(a)(v), is not limited to situations where the victim is in actual physical possession of the property. *Moore,* 343 Pa.Super. at 247–48, 494 A.2d at 450. We ultimately concluded that the facts of that retail theft case did not constitute the taking of property from the person of another. In so doing, however, this Court noted that our rules of strict construction of criminal statutes do not require "that the words of a criminal statute be given their narrowest meaning" and reasoned that limiting robbery by force to removal of property only from the victim's body "is extremely narrow and not a reasonable interpretation of that phrase." *Id.* at 247, 494 A.2d at 450. Indeed, we concluded that "common sense dictates that a person need not be in actual physical possession of property to have it taken from his person." *Id.* at 248, 494 A.2d at 450.

¶ 26 Neither our Supreme Court nor this Court has had occasion to construe this language in the context of Section 3903. Both parties and the trial court, therefore, draw our attention to the only two prior published cases from this Court to consider the import of the statutory language: *Commonwealth v. Monroe,* 451 Pa.Super. 197, 678 A.2d 1208 (1996) and *Commonwealth v. Williams,* 389 Pa.Super. 489, 567 A.2d 709 (1989).

¶ 27 In *Williams,* this Court determined that the theft of a wallet from an open tote bag that was being carried by the victim as she boarded a bus in a downtown shopping area properly was graded as a theft from the person under 18 Pa.C.S.A. § 3903(b) because "the wallet was removed from the tote bag which the victim was carrying on

**6.** This provision subsequently has been    amended substantially.

her person. As such, the wallet also was taken from the person of the victim." *Williams,* 389 Pa.Super. at 496, 567 A.2d at 713. Citing to the comments to the Model Penal Code, from which Section 3903 was derived, this Court noted that "[t]he reason for imposing a higher penalty for such a theft, irrespective of the value of the property taken, is that such a theft involves 'special potentialities for physical violence or alarm associated with the taking....'" *Id.* (citations omitted).

¶ 28 Following *Williams,* in *Monroe,* we found no such heightened potential for violence in a theft by "flim flam" involving the defendant's elaborate scheme to deceive the victim and to convince her by oral and written misrepresentations to give him money voluntarily based on that deception. *Monroe,* 451 Pa.Super. at 205–206, 678 A.2d at 1212–13. Thus, in that case, we

held that the sentencing court improperly had graded the defendant's offense a first-degree misdemeanor as a theft from the person. *Id.* at 208, 678 A.2d at 1214.

¶ 29 In *Monroe,* we found further support for our conclusion by examining the reasoning of analogous cases from other jurisdictions. *Id.* at 206–207, 678 A.2d at 1213. Likewise in the present case, we may seek guidance from our sister states that have grappled with defining how remote property may be from the body of the victim yet still constitute theft from the person.[7] At least seven states[8] have held that in order to constitute theft from the person, the property taken must have been physically attached to the victim.[9] In contrast, eleven states[10] have interpreted this language as including situations where property is taken from the presence and

---

**7.** We note that despite the absence of direct authority within the Commonwealth of Pennsylvania regarding this issue, neither party to the present appeal brought any of these cases to the attention of this Court.

**8.** *See Wilder v. State,* 30 Ala.App. 107, 1 So.2d 317 (1941); *People v. McElroy,* 116 Cal. 583, 48 P. 718 (1897); *State v. Crowe,* 174 Conn. 129, 384 A.2d 340 (1977); *People v. Sims,* 245 Ill.App.3d 221, 185 Ill.Dec. 452, 614 N.E.2d 893 (1993); *People v. Gould,* 15 Mich.App. 83, 166 N.W.2d 530 (1968), *aff'd in part and rev'd in part on other grounds,* 384 Mich. 71, 179 N.W.2d 617 (1970); *Terral v. State,* 84 Nev. 412, 442 P.2d 465 (1968); *State v. Lucero,* 28 Utah 2d 61, 498 P.2d 350 (1972). The Illinois Court of Appeals did expand the definition of theft from the person, however, by holding that it "occurs when property is actually taken from the victim's person or when the victim has been detained or searched ... or when the victim's privacy has been directly invaded at the time the property is taken." *Sims,* 185 Ill.Dec. 452, 614 N.E.2d at 896 (citations omitted).

**9.** These states have varied, however, in how attenuated the physical contact between the property and the victim may be to still constitute theft from the person. *See In re George B., Jr.,* 228 Cal.App.3d 1088, 279 Cal.Rptr.

388 (1991) (theft of groceries from shopping cart being pushed by the victim sufficient to constitute theft from the person because the victim was "actively carrying the bag ... through the medium of the shopping cart" and the shopping cart and its contents, therefore, were attached to her person).

**10.** *See State v. Tramble,* 144 Ariz. 48, 695 P.2d 737 (1985); *Banks v. State,* 74 Ga.App. 449, 40 S.E.2d 103 (1946); *State v. Kobylasz,* 242 Iowa 1161, 47 N.W.2d 167 (Iowa 1951); *Commonwealth v. Subilosky,* 352 Mass. 153, 224 N.E.2d 197 (1967); *In re Welfare of D.D.S.,* 396 N.W.2d 831 (Minn.1986); *State v. Jones,* 499 S.W.2d 236 (Mo.Ct.App.1973); *State v. Blow,* 132 N.J.Super. 487, 334 A.2d 341 (1975); *State v. Buckom,* 328 N.C. 313, 401 S.E.2d 362 (1991); *State v. Shepard,* 726 A.2d 1138 (R.I.1999); *State v. Brennan,* 775 A.2d 919 (Vt.2001); *Garland v. Commonwealth,* 18 Va.App. 706, 446 S.E.2d 628 (1994). Although it held that physical contact is not required, the Supreme Court of Vermont further held in *Brennan* that the defendant's conduct must satisfy one of the factors used to determine whether the "zone of protection" around the victim's person has been violated. *Brennan,* 775 A.2d at 925.

immediate control of the victim, even if it was not physically attached to the victim.

¶ 30 In *Williams*, this Court noted that a heightened penalty was applied to thefts from the person because of the "special potentialities for physical violence or alarm associated with the taking." *Williams*, 389 Pa.Super. at 496, 567 A.2d at 713 (citations omitted). The jurisdictions that have interpreted theft from the person as encompassing thefts from the victim's immediate presence and control have cited to similar concerns. For example, the Superior Court of New Jersey concluded that theft from the person "includes the theft of money, goods or chattels which are within the immediate custody and control of the victim" because in such a case "[a] danger of confrontation between thief and victim was present and the victim's person and privacy were invaded." *Blow*, 334 A.2d at 343 (theft of money from beneath the car seat on which the victim was seated). The Supreme Court of Arizona similarly reasoned that:

> The purpose of enhancing punishment for the taking of property having little monetary value is obviously to punish more severely those crimes which create a threat of violent confrontation. Such a threat is present whether the taking of property is from the victim's body or from his immediate possession or control.

*Tramble*, 695 P.2d at 741 (citations omitted).

¶ 31 We agree that a theft of property in a victim's presence and from his immediate possession or control implicates the same "special potentialities for physical violence or alarm," as we discussed in *Williams, supra*, as a theft from the victim's body. Accordingly, we conclude that in order to be graded as a theft from the person under Section 3903, property need not be taken from the victim's body as long as it is taken in his presence and from his immediate possession and control.

¶ 32 This conclusion does not completely resolve Appellant's claims that he received ineffective assistance of counsel because Appellant further argues that the issue of whether the property was taken from the person should have gone to the jury.[11] (Appellant's Brief at 16.) We agree that in disputed cases, the determination of whether property was taken from the person for purposes of grading the offense normally would be a question for the jury, just as the value of stolen items, when disputed, is a jury question. *See Commonwealth v. Sparks*, 342 Pa.Super. 202, 211, 492 A.2d 720, 725 (1985) ("As to grading of ... theft offenses, it is clear that value becomes determinative and this, too, is a factual question, which has been regarded as a jury question, although it is not an element of the crime.").

¶ 33 In the present case, however, the trial court stated that Appellant's trial

---

11. In support of his argument on this and other points, Appellant relies on *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000). In *Apprendi*, the United States Supreme Court was called upon to determine whether a jury finding was required before a penalty could be imposed under a New Jersey statute that provided for an extended sentence of ten to twenty years in addition to the sentence for the underlying offense if the crime was deemed to have been a hate crime. *Id.* at 469, 120 S.Ct. 2348. The Court held that any fact, other than a prior conviction, that enhances the penalty for a crime beyond the statutory maximum must be submitted to a jury. *Id.* at 490, 120 S.Ct. 2348. As the present case concerns the propriety of the grading of the offense which thereby establishes the maximum penalty, and not an enhancement to the sentence beyond the statutory maximum penalty for the theft offenses, we conclude that *Apprendi* does not apply.

counsel's stipulation to grading of the theft offenses as first-degree misdemeanors would remove the possibility that the offenses would be graded as third-degree felonies, if the jury determined that the amount involved exceeded $2,000 based on its valuation of the stolen credit cards. The appellate courts of our Commonwealth have not yet had occasion to speak on how credit cards should be valued for purposes of grading theft offenses, and this issue is not before us today. In determining the value of credit cards in criminal enterprises, however, other jurisdictions have considered the nominal value of the cards themselves, the "street value" of the stolen cards, the value of the cash, goods or services actually obtained with the purloined cards, and/or the total credit limit that may be accessed by the cards as possible measures of their value.[12]

■ ¶ 34 In the present case, Christina Geiser testified that an unspecified amount of cash and three credit cards had been taken from her wallet and that charges in excess of $1,000 had been made on one of the stolen credit cards. Geiser further testified that two of the stolen credit cards each had an approximate credit limit of $1,500. Based on these facts, Appellant faced a real possibility of having his theft offenses classified as third-degree felonies with a maximum penalty of seven years imprisonment. See 18 Pa.C.S.A. §§ 1103 and 3903(a.1). We cannot say, therefore, that his trial counsel's conduct in agreeing to stipulate that the offenses would be graded as first-degree misdemeanors, with a maximum penalty of five years imprisonment, was without a reasonable basis designed to effectuate his client's interest or that it was so unreasonable that no competent counsel would have chosen it.[13] Accordingly, Appellant's claims of ineffective assistance of counsel based on his trial counsel's agreement to the stipulation and failure to object to the jury instructions must fail.

¶ 35 Appellant also claims that his trial counsel was ineffective for failing to raise the issue that the bills of information "failed to put the defendant on notice that he would have to defend against a charge that the items were taken from the person." (Appellant's Brief, at 12.) We previously have stated that:

> The purpose of the information is to advise the accused of the allegations and the crimes charged, to give sufficient notice to allow the opportunity to pre-

---

12. *See United States v. Nosrati–Shamloo*, 255 F.3d 1290, 1292, (11th Cir.2001) ("[O]nce a defendant has gained access to a certain credit line by fraudulently applying for credit cards, a district court does not err in determining the amount of the intended loss as the total line of credit to which Defendant could have access, especially when Defendant presents no evidence that he did not intend to utilize all of the credit available on the cards.") *cert. denied,* —— U.S. ——, 122 S.Ct. 566, 151 L.Ed.2d 440 (2001); *Miller v. People*, 193 Colo. 415, 566 P.2d 1059, 1061 (1977) ("Where the stolen item ... has no market value in lawful channels, ... other objective evidence of value may be admitted, including evidence of the 'illegitimate' market value.... Evidence of the dollar amount which may be purchased using the credit card ... provides an objective means of evaluating the illegitimate market value of credit cards.").

13. Indeed, given Geiser's uncontradicted testimony regarding the value of the items taken from her, it appears that the theft from her appropriately would be graded as a first-degree misdemeanor based on the value of the items stolen. While Sueann Hedgepath provided less precise testimony regarding the value of the items in her wallet, Shamberger's sentence on the attempted theft count was the same as, and to be served concurrently with, his sentence on the theft count. Thus, Appellant cannot demonstrate that his counsel's conduct in agreeing to stipulate that this offense would be graded as a first-degree misdemeanor prejudiced him.

pare a defense, and to define the issues for trial. The grading of the offense is not an element thereof; if an erroneous grading is included in an information, the sentencing court is not bound to sentence according to the error, but may sentence in accordance with the true grading of the crimes alleged and proven. That is, if the elements of a first degree felony are averred and proven, but an erroneous labeling of second degree felony is in the information, the court may sentence as a first degree felony.

*Commonwealth v. Kisner,* 736 A.2d 672, 674 (Pa.Super.1999).

¶ 36 In the present case, the bills of information for the theft offenses state that Appellant was charged with theft and attempted theft without specifying any grade for these offenses. As we set forth above, whether the property was taken from the person, like the grading of the offense in general, is not an element of these offenses. In addition, as the trial court noted in its opinion, "the criminal complaint and the discovery materials presented to the Appellant adequately placed him on notice that the items were taken from the person." (Trial Court Opinion, 1/11/00, at 18.) Indeed, we note that the criminal complaints specified both theft and attempted theft as "M1".

¶ 37 We agree with the trial court's conclusion that Appellant had adequate notice that the items were taken from the person. Accordingly, Appellant's claim that his counsel was ineffective for failing to raise the issue of alleged defects in the bills of information is meritless.[14]

¶ 38 Appellant's final allegation of error is that his sentence was illegal as to his

theft convictions. Appellant's specific claim, however, is that the offenses improperly were graded and he does not contend that the sentence otherwise was improper. As we have determined that the property taken need not be physically attached to the victim in order to constitute theft from the person and that Appellant's counsel had a reasonable basis to agree to the stipulation regarding the grading of the offense, we hold that the trial court properly sentenced Appellant's theft convictions as first-degree misdemeanors based upon that stipulation.

¶ 39 Having found no merit to any of Appellant's contentions on appeal, we affirm his judgment of sentence.

¶ 40 Del Sole, President Judge, files a Dissenting Statement.

¶ 41 McEwen, President Judge Emeritus, files a Dissenting Statement.

DEL SOLE, President Judge,
Dissenting:

¶ 1 I cannot agree with the Majority's conclusion that a theft conviction can be graded as a first-degree misdemeanor under 18 Pa.C.S.A. § 3903 absent a showing that the property is taken from the victim's body. I do not agree that where the property is unknowingly taken in the victim's presence, but not from the person as Section 3903 directs, its grading provisions should apply. Both Ms. Geiser's and Ms. Hedgepath's items were taken from purses which were placed by them under their seats in a movie theater. The victims placed their purses on the floor and were not holding onto or touching the purses or the straps. They never felt or recognized

---

**14.** We note as well that the trial court states in his opinion that he would have granted amendment of the bills of information if trial counsel had objected. (Trial Court Opinion, 1/11/00, at 18.) Thus, even if we had found merit in Appellant's argument that they were defective, he would not have been able to meet the prejudice requirement.

when Appellant removed an item from their purses. Under these circumstances, where the item is not physically on the victim and the victim does not even realize an item has been taken, I believe we must conclude that counsel was ineffective for stipulating to the grading of the theft offense as a first-degree misdemeanor.

McEWEN, President Judge Emeritus, Dissenting:

¶ 1 While the author of the majority view has proposed quite a perceptive expression of rationale for rejection of each of the arguments of appellant, I am compelled to join the dissenting statement of President Judge Del Sole that the criminal conduct of appellant cannot be graded as a first-degree misdemeanor under 18 Pa.C.S. § 3903, because the purses were purloined from the floor of the theatre and not from the person of the victims.

¶ 2 It is my further view that the convictions for forgery must be reversed since the use by appellant of a fictitious name when he executed the police fingerprint cards did not compose a violation charged by the Commonwealth under the Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4101(a)(2), which provides [15]:

§ 4101. Forgery

(a) Offense defined.—A person is guilty of forgery if, WITH INTENT TO DEFRAUD or injure anyone . . .

(2) makes, completes, executes, authenticates, issues or transfers any writing so that it purports to be the act of another who did not authorize that act, or to have been executed at a time or place or in a numbered sequence other than was in fact the case, or to be a copy of an original when no such original existed;

18 Pa.C.S. § 4101(a)(2) (emphasis supplied).

¶ 3 Since it is undisputed that Kevin Price is not a real person, appellant did not, by signing the name *Kevin Price*, adopt the identity of a real person with the intent to defraud. Nor can it be said that the police were defrauded.

¶ 4 A basic tenet of our jurisprudence is that:

A fundamental principle of a government of laws is that a citizen may only be subjected to punishment for violation of expressly proscribed conduct, which is to say that a citizen may not be subjected to punishment for conduct which a prosecutor or editor, or even a neighborhood, or even a majority of the citizenry, perceives as offensive or wanting in style or taste or demeanor—*nullum crimen sine lege.*

*Commonwealth v. Cosgrove*, 436 Pa.Super. 550, 648 A.2d 546, 548 n. 8 (1994), *aff'd.*, 545 Pa. 71, 680 A.2d 823 (1996) (emphasis supplied).

¶ 5 Thus, prosecutors are obliged to be focused and precise [16] at the charging stage, since overindictment reflects a lack of confidence in the ability of the prosecutor to establish the guilt of the core offenses, while wrongful indictment suggests

---

**15.** Although the Commonwealth charged appellant with violations of all three subsections of Section 4101(a), Subsection (a)(1) and (a)(3) are patently inapplicable to the conduct of appellant.

**16.** It is not purposeful to here address whether the Act of Dec. 6, 1972, P.L. 1482, No. 334, § 1, 18 Pa.C.S. § 4904, describing unsworn falsification to authorities, applies to this conduct of appellant. *See: Commonwealth v. Miller*, 414 Pa.Super. 56, 606 A.2d 495 (1992), *appeal denied*, 531 Pa. 639, 611 A.2d 711 (1992).

professional irresponsibility, if not misuse of office.