J-A23045-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| TYRELL KHALIL JACOBS | : | |
| | : | |
| Appellant | : | No. 934 EDA 2020 |

Appeal from the Judgment of Sentence Entered February 7, 2020
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0001943-2018

BEFORE: KUNSELMAN, J., NICHOLS, J., and PELLEGRINI, J.[*]

MEMORANDUM BY PELLEGRINI, J.: **FILED NOVEMBER 18, 2020**

Tyrell Khalil Jacobs (Jacobs) appeals from the February 7, 2020 judgment of sentence[1] imposed by the Court of Common Pleas of Chester County (trial court) following his convictions for first-degree murder and associated offenses. Jacobs challenges the sufficiency and weight of the evidence to support his convictions. After careful review, we affirm.

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] Jacobs' notice of appeal stated that he was appealing from the trial court's February 18, 2020 order denying his post-sentence motion. "In a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." **Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa.Super. 2001) (*en banc*) (citation omitted). We have amended the caption accordingly.

**I.**

We glean the following facts from the trial court's opinion:

The facts at trial established that, on April 10, 2018, [Jacobs] and his half-brother, Timothy Jacobs, pursued and killed Eric Brown by a fatal gunshot wound to the chest after a dispute during a basketball game. [Jacobs] punched the victim several times and attempted to entice Mr. Brown to leave the bar to go outside, presumably to continue the altercation without witnesses. Mr. Brown refused, instead, he tried to diffuse the situation. Video footage from inside the Star Social Club reveals that [Jacobs] and Timothy Jacobs chased the victim around the bar. Timothy brandished a firearm and pointed it at Mr. Brown while chasing him. The two attackers eventually cornered Mr. Brown in a rear storage room as he attempted to escape through the back door. It was locked. There was no way out. [Jacobs] stood at the door to the storage room, blocking it, and fired one shot at Eric Brown's chest, taking his life. [Jacobs] and Timothy Jacobs fled the scene to avoid apprehension. [Jacobs] and Timothy Jacobs were eventually arrested in Philadelphia by the United States Marshals Service and the Philadelphia Fugitive Task Force.

Trial Court Opinion, 6/2/2020, at unnumbered 2. At trial, the Commonwealth introduced video surveillance footage showing several angles inside of the Star Social Club. The footage captured the initial altercation and chase in the bar portion of the club as well as the shooting near the rear entrance. In addition, the Commonwealth introduced surveillance video footage from surrounding areas depicting the Jacobs brothers' arrival at the bar and flight after the shooting.

Following the reception of the evidence, the jury found Jacobs guilty of first-degree murder, aggravated assault, carrying a firearm without a license, possession of an instrument of crime, possession of a weapon, three counts of recklessly endangering another person and conspiracy to commit

aggravated assault.[2]   On February 7, 2020, Jacobs was sentenced to life in prison on the count of first-degree murder.[3]   Jacobs timely filed a post-sentence motion, which the trial court denied.  Jacobs timely appealed, and he and the trial court have complied with Pa.R.A.P. 1925.  On appeal, Jacobs challenges the sufficiency and weight of the evidence only as to the count of first-degree murder.  We address each issue in turn.

## II.

Jacobs first challenges the sufficiency of the evidence to support his conviction for first-degree murder, as he contends that the Commonwealth failed to prove beyond a reasonable doubt that he possessed the requisite intent to kill.[4]   Jacobs argues that the altercation began as a simple bar fight

---

[2] 18 Pa.C.S. §§ 2502(a), 2702(a)(1), 6106(a)(1), 907(a), 907(b), 2705, & 903.

[3] The trial court imposed concurrent sentences on all other counts.

[4] Our standard of review is well-settled:

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt.  In applying [this] test, we may not weigh the evidence and substitute our judgment for the fact-finder.  In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence.  Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances.  The Commonwealth

and only "mere fractions of a second" elapsed between the fight in the bar area of the club and the shooting in the back room of the club. Jacobs' Brief at 14. He contends that he did not draw his gun during the fight in the bar, and that the short period between entering the back room and firing the gun was insufficient for him to form the specific intent to kill. He argues instead that the firearm was accidentally discharged during the chase. We disagree.

A person is guilty of first-degree murder if the Commonwealth establishes beyond a reasonable doubt "(1) a human being was unlawfully killed; (2) the defendant was responsible for the killing; and (3) the defendant acted with malice and a specific intent to kill." **Commonwealth v. Thomas**, 54 A.3d 332, 335 (Pa. 2012); 18 Pa.C.S. 2502(a). An intentional killing is one committed "by means of poison, or by lying in wait, or by any other kind of willful, deliberate and premeditated killing." 18 Pa.C.S. 2502(d). "It is well settled that premeditation and deliberation exist whenever the assailant possesses the conscious purpose to bring about death, and can be formulated

---

may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the trier of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

**Commonwealth v. Lopez**, 57 A.3d 74, 79 (Pa. Super. 2012) (citation omitted).

in a fraction of a second." ***Commonwealth v. Cash***, 137 A.3d 1262, 1269 (Pa. 2016) (cleaned up). Moreover, "the specific intent to kill may be inferred where . . . the accused uses a deadly weapon on a vital part of the victim's body." ***Id.*** Our Supreme Court has previously held that the use of a firearm to shoot a victim in the chest was sufficient to establish the specific intent to kill. ***Thomas***, ***supra***; ***Commonwealth v. Briggs***, 12 A.3d 291, 307 (Pa. 2011).

Here, the evidence adduced at trial established that Jacobs had been involved in an argument with the victim on the night in question during a pick-up basketball game. After the game, the victim went to the Star Social Club. Jacobs arrived at the club shortly thereafter with his brother and the two began arguing with the victim in the bar. Jacobs punched the victim three times during the argument and he and his brother chased the victim through the bar and prevented him from leaving through the front door. The victim then attempted to run into the back room and exit through the back door to the bar, which was locked. Jacobs followed the victim into the back room and fired a single shot into his chest, killing him. Jacobs and his brother then fled the scene.

Viewing the evidence in the light most favorable to the Commonwealth, there was sufficient evidence for the jury to conclude that Jacobs intended to kill the victim when he fired a single shot into his chest. Jacobs' argument is based primarily on his interpretation of the body language in the video of the

shooting, as he contends that the position of his arms and torso indicate that the firearm discharged accidentally. However, this argument construes the video in the light most favorable to him. Under the proper standard of review, the videos introduced at the trial show that Jacobs and his brother initiated a physical fight with the victim, chased him through the bar, prevented him from leaving through the front door, and boxed him into the back room before Jacobs shot him once in the chest. Firing a fatal shot into the victim's torso, a vital part of the body, is sufficient to establish the specific intent to kill. **Thomas**, **supra**; **Briggs**, **supra.** While Jacobs did not have his firearm in his hand until he entered the back room, seconds before the shooting, the intent to kill may be formed within fractions of a second. **Cash, supra**. As the evidence is sufficient to support Jacobs' conviction for first-degree murder, his first claim is meritless.

## III.

In the alternative, Jacobs argues that the trial court abused its discretion in holding that the verdict was not against the weight of the evidence.[5] He

---

[5] When evaluating a challenge to the weight of the evidence to support a conviction, this court does not reweigh the evidence presented at trial, but rather evaluates the trial court's denial of the motion for a new trial for an abuse of discretion. **Commonwealth v. Clay**, 64 A.3d 1049, 1054-55 (Pa. 2013). An abuse of discretion occurs "where the course pursued represents not merely an error of judgment, but where the judgment is manifestly unreasonable or where the law is not applied or where the record shows that the action is a result of partiality, prejudice, bias or ill-will." **Id.** (citation omitted). A trial court's determination that the verdict was not against the

again points out that he did not brandish his firearm during the fight in the bar and only fractions of a second elapsed between entering the back room of the bar and the shooting. He contends that those "mere fractions of a second [were] not of sufficient weight" to support his conviction for first-degree murder. **See** Jacobs' Brief at 16. He also argues that the jury should have afforded more weight to his body language in the video of the shooting, as it indicated that he had not aimed the firearm at the victim and that the gun had accidentally discharged. This claim is meritless.

"An allegation that the verdict is against the weight of the evidence is addressed to the discretion of the trial court." **Commonwealth v. Sullivan**, 820 A.2d 795, 805-06 (Pa. Super. 2003) (citation omitted). "Trial judges, in reviewing a claim that the verdict is against the weight of the evidence do not sit as the thirteenth juror. Rather, the role of the trial judge is to determine that notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice." **Commonwealth v. Widmer**, 744 A.2d 745, 752 (Pa. 2000) (quotations omitted). A new trial is appropriate only when the verdict "is so contrary to the evidence as to shock one's sense of justice." **Commonwealth v. Olsen**, 82 A.3d 1041, 1049 (Pa. Super. 2013) (citation omitted). "[T]he evidence must be so tenuous, vague and uncertain that the verdict shocks the

---

weight of the evidence is "[o]ne of the least assailable reasons for granting a new trial." **Id.** (citation omitted).

- 7 -

conscience of the court." ***Commonwealth v. Akhmedov***, 216 A.3d 307, 326 (Pa. Super. 2019) (*en banc*) (citation omitted).

After a review of the evidence, including the video of the shooting and the altercation in the bar, we conclude that the trial court did not abuse its discretion in denying Jacobs' motion for a new trial. The first video of the chase in the bar depicts Jacobs and his brother surrounding the victim and preventing him from exiting the bar, forcing him to enter the locked back room. During the chase, Jacobs punched the victim three times. The victim attempts to escape the altercation but Jacobs and his brother maneuver around the bar to prevent him from leaving or seeking cover. As the victim runs into the back room, Jacobs reaches toward his waistband.

Once the two enter the back room, the second surveillance video depicts the victim attempting to leave through the back door. Because the door is locked, he turns around to leave through the doorway he had just entered, but Jacobs is standing in the doorway. Jacobs raises his arm toward the victim and there is a muzzle flash, then the victim falls to the floor. Jacobs immediately attempts to flee through the back door, discovers it is locked, and runs back past the victim's body to exit the building through the bar area.

This evidence supported the Commonwealth's theory that Jacobs deliberately provoked a fight with the victim in the bar, chased him and cornered him to prevent him from leaving the bar, and intentionally fired a single shot into his chest, killing him. While Jacobs argued at trial that the

gun had accidentally discharged, the jury was entitled to disbelieve this explanation for the events and credit the evidence that Jacobs intentionally killed the victim following a disagreement about a basketball game. Neither this court nor the trial court may reweigh the evidence to override the jury's credibility and factual determinations, as they are not "so contrary to the evidence as to shock one's sense of justice." **Olsen, supra**. The trial court did not abuse its discretion in denying relief on this claim.

Judgment of sentence affirmed.


*Judgment Entered.*

_____
*Joseph D. Seletyn, Esq.*
*Prothonotary*


*Date: 11/18/2020*