J-S51040-20

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P.  65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| ISMAEL FIGUEROA SERRANO | : | |
| | : | |
| Appellant | : | No.   693 MDA 2020 |

Appeal from the Judgment of Sentence Entered December 31, 2019
In the Court of Common Pleas of Fulton County Criminal Division at
No(s):  CP-29-CR-0000003-2019

BEFORE:  MURRAY, J., McLAUGHLIN, J., and McCAFFERY, J.

MEMORANDUM BY McCAFFERY, J.:              **FILED DECEMBER 21, 2020**

Ismael Figueroa Serrano (Appellant) appeals from the judgment of sentence entered in the Fulton County Court of Common Pleas, following his jury conviction of persons not to possess firearms.[1]  Appellant argues his conviction, based upon constructive possession, was against the weight of the evidence because of inconsistencies in witness testimony, as well as incredible witness testimony.  We affirm.

Appellant and his then girlfriend, Jessica Moore, lived in a home with their newborn child.  N.T. Jury Trial, 12/18/19 at 43-44.  Appellant was convicted in 2007 for robbery[2] thereby rendering him ineligible to own or

_____

[1] 18 Pa.C.S. § 6105(a)(1).

[2] 18 Pa.C.S. § 3701(a).

possess a firearm. ***Id.*** at 21; ***see*** 18 Pa.C.S. § 6105(b) (discussed ***infra***). The case proceeded to a jury trial on December 18, 2018, where the Commonwealth pursued a theory of constructive possession. The Commonwealth presented the following testimony:

Appellant's parole officer (PO), Michael Ruggiero (PO Ruggiero), testified that on January 2, 2019, he received a telephone call from Moore's mother, Laura Keefer (Keefer), informing him Appellant had a gun inside his home. N.T. at 24. PO Ruggiero met with Keefer that day who showed him a photo of the gun. ***Id.*** PO Ruggiero then went to Appellant's home the same day for an unannounced visit. ***Id.*** PO Ruggiero informed Appellant why he was there and asked Appellant if there was a firearm in the home. ***Id.*** at 25. Appellant admitted there was a gun in the closet of his newborn daughter's room. ***Id.*** PO Ruggiero asked Appellant why he was in possession of a firearm, to which Appellant responded he had "nowhere else to put it." ***Id.*** at 25-26. PO Ruggiero observed the firearm in the closet, took photos, and immediately reported the incident to the Pennsylvania State Police. ***Id.*** at 26, 28.

Pennsylvania State Police Trooper Jeffrey Beal (Beal) testified that he responded to PO Ruggiero's call and on the same day went to Appellant's home. N.T. at 32-33. PO Ruggiero directed Beal to the closet in Appellant's child's bedroom, where he recovered a .22 Marlin rifle. ***Id.*** at 33. Beal testified it was a "real firearm" meaning he successfully test fired the weapon on April 20, 2019, to confirm it was functional. ***Id.*** at 34-35.

At trial, Keefer testified she became aware in the summer of 2018 Appellant possessed a firearm, when she saw the gun in Appellant's prior residence. N.T. at 44-45. Keefer saw the gun a second time[3] when she helped Appellant and Moore move into their new home. *Id.* At that time, Appellant asked Keefer's then fiancé, now husband, if he could keep the gun because Appellant "wasn't allowed to have it." *Id.* at 45. Keefer and her husband agreed to keep the gun in their garage. *Id.*

In December 2018, Moore sent Keefer a text message stating Appellant wanted to retrieve the gun to go hunting. N.T. at 45-46. Thereafter, Appellant retrieved the gun. *Id.* at 46. Subsequently, Keefer saw the gun at Appellant's house, in the room Appellant "used to do his drawings and tattoos." *Id.* At that time, Keefer took a photo of the gun. *Id.*

Keefer further testified at trial that on January 2, 2019, she called PO Ruggiero and told him Appellant had a gun in his home and she had photos of it. N.T. at 46-47. Keefer showed PO Ruggiero the photo of the gun and told him she believed the gun was in his "work room where he draws and stuff." *Id.* at 47. Keefer also contacted PO Ruggiero once previously to report a separate issue with Appellant.[4] *Id.* at 50. Keefer admitted she wanted

---

[3] Keefer does not specify when she saw the gun the second time. *See* N.T. at 45.

[4] Keefer previously reported that Appellant told Moore "he stole her Methadone." N.T. at 50. Keefer believed PO Ruggiero investigated this claim, but acknowledged that ultimately, this claim "wasn't true. [Appellant] had just hid it from" Moore. *Id.*

Appellant out of Moore's life and "had it with having to support his family and his attitude that we owed him." *Id.* at 50-51.

The Commonwealth also presented the testimony of Levi Starliper (Starliper), the prior owner of the gun. He testified "[a]bout" two years prior to trial, he gave the firearm to Appellant in exchange for tattoo services. N.T. at 62. Starliper never received the tattoo from Appellant as they were "busy and it just . . . fell through." *Id.* at 62, 66. Starliper confirmed the firearm confiscated from Appellant's home was the one he traded to Appellant. *Id.* at 63.

Finally the Commonwealth presented the testimony of Appellant's girlfriend, Jessica Moore (Moore), who testified she lived with Appellant on January 2, 2018. N.T. 53. Moore said the gun belonged to both her and Appellant, and was located at her mother's home for an unspecified amount of time before she moved it to the home she formerly shared with Appellant. *Id.* at 54-55. Moore and Appellant stored the gun in their child's bedroom closet. *Id.* at 54.

Moore further admitted after Appellant's arrest, she and Appellant "[were] going to say" the gun belonged only to her. N.T. at 55. Moore initially told Beal she bought the gun "and kept it in a garage."[5] *Id.* at 57, 59.

---

[5] Moore did not specify the dates she spoke to the state troopers regarding ownership of the gun.

However, "[a] few weeks later," she was directed to go to the police station, to speak with Trooper Strait.[6]  Moore told Trooper Strait she lied to Beal because she "was scared" she would be arrested for perjury.  *Id.* at 58.  Moore's testimony at trial was consistent with her statement to Trooper Strait — that she did not buy the gun.

Appellant did not testify or present any evidence and the jury found him guilty of persons not to possess firearms.

On December 31, 2019, the trial court imposed a sentence of 60 to 120 months' incarceration.  Appellant filed a timely post-sentence motion challenging the weight of the evidence, which was denied on April 7, 2020.  Appellant took this timely appeal[7] and complied with the court's order to file a Pa.R.A.P. 1925(b) statement of errors complained of on appeal.  Appellant presents the following single issue for our review:

> Did the trial court abuse its discretion by upholding the guilty verdict to Count 1-persons not to possess firearm (F2) that was against the weight of the evidence presented such that [Appellant] is entitled to a new trial?

---

[6] Trooper Strait's first name is not apparent from the record.

[7] Although Appellant's post-sentence motion was denied on April 7, 2020, the docket reveals that notice of entry of the order was mailed to the parties on April 8, 2020.  Thus, Appellant timely filed his notice of appeal 30 days later, on May 8, 2020.  *See* Pa.R.A.P. 903(a); Pa.R.Crim.P. 702(A)(2).  However, he improperly purported to appeal from the April 7, 2020, order denying his post-sentence motion, when an appeal properly lies from the judgment of sentence imposed on December 31, 2019.  Accordingly, our Prothontary has corrected the caption.  *See Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*) (correcting the caption when appellant misstates where the appeal lies).

Appellant's Brief at 7.

Appellant avers his conviction of persons not to possess firearms was against the weight of the evidence due to "discrepancies and conflicts in the testimony." Appellant's Brief at 13. He argues the jury's verdict "shocks the conscience" and the trial court abused its discretion in denying his request for a new trial. *Id.* First, Appellant argues Moore admitted she initially lied to police, stating the gun belonged to her. Appellant further contends Moore's latter story, that Appellant exchanged the gun for a tattoo, "crumbles," as Moore also testified that it was she, not Appellant, who "got the firearm from Keefer's house." *Id.* at 18. Second, Appellant maintains "Keefer clearly intended to seek to violate [him] with his parole officer," where Keefer "admits that she wanted him out of her daughter's life." *Id.* Finally, Appellant argues Starliper's testimony did not "make sense," because Starliper never received a tattoo from Appellant yet made "no complaints or other communications." *Id.* We disagree.

This Court has stated:

> The weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. An appellate court cannot substitute its judgment for that of the finder of fact. Thus, we may only reverse the lower court's verdict if it is so contrary to the evidence as to shock one's sense of justice.
>
> Moreover, where the trial court has ruled on the weight claim below, an appellate court's role is not to consider the underlying question of whether the verdict is against the weight of the evidence. Rather, appellate review is limited to whether the trial court palpably abused its discretion in ruling on the weight claim.

*Commonwealth v. Champney*, 832 A.2d 403, 408 (Pa. 2003) (citations omitted).

> A new trial should not be granted because of a mere conflict in the testimony. . . Rather, the role of the trial judge is to determine that "notwithstanding all the facts, certain facts are so clearly of greater weight that to ignore them or to give them equal weight with all the facts is to deny justice."

*Commonwealth v. Widmer*, 744 A.2d 745, 752 (2000) (citations omitted).

> The offense of persons not to possess firearms is defined as follows:
>
> A person who has been convicted of an offense enumerated in subsection (b), within or without this Commonwealth, regardless of the length of sentence or whose conduct meets the criteria in subsection (c) shall not possess, use, control . . . a firearm in this Commonwealth.

18 Pa.C.S. § 6105(a)(1). Subsection (b) states robbery is an enumerated felony prohibiting gun possession. 18 Pa.C.S. § 6105(b).

The Commonwealth proceeded on a theory of constructive possession. Constructive possession is "the power to control the contraband and the intent to exercise that control. The fact that another person may also have control and access does not eliminate the defendant's constructive possession . . . As with any other element of a crime, constructive possession may be proven by circumstantial evidence." *Commonwealth v. McClellan*, 178 A.3d 874, 878 (Pa. Super. 2018) (citations omitted).

Appellant argues that Keefer actively worked to remove him from Moore's life, and that she "clearly intended" to have Appellant violate parole. Appellant's Brief at 18. This alleged motive is immaterial. Although Keefer

admits wanting Appellant "out of Moore's life,"[8] the jury was free to weigh this admission in determining her credibility. **See Champney**, 832 A.2d at 408. Similarly, Keefer's prior report to PO Ruggiero is also not dispositive. **See** Appellant's Brief at 19. To the contrary, the prior relationship merely goes to the credibility of the witness. The jury's decision to believe Keefer is a credibility determination that will not be disturbed on appeal.

Appellant is clearly ineligible to possess a firearm pursuant to 18 Pa.C.S. § 6105. The firearm in question satisfied the criteria of a prohibited firearm as defined in the statute.[9] Appellant's weight of the evidence argument focuses exclusively on constructive possession. Here, the Commonwealth presented cumulative evidence of constructive possession through Keefer, Moore, and PO Ruggiero's testimony. **See** N.T. at 25-26, 45-46, 54. The jury, as fact finder, found this testimony regarding the location of the firearm, as well as Appellant's admission to possession of the firearm, to be credible and beyond a reasonable doubt. The jury reasonably inferred from this cumulative evidence and the totality of the circumstances that Appellant constructively possessed the firearm in violation of 18 Pa.C.S. § 6105. Trial Ct. Op., 4/7/20 at 7.

As stated above, the jury was free to believe all, part, or none of the evidence presented. **See Champney**, 832 A.2d at 408. Appellant's argument

---

[8] N.T. at 50-51.

[9] 18 Pa.C.S. § 6105(b).

— that the jury's credibility determination denies him justice — fails to address how the testimony went beyond "mere conflict" addressed in **Widmer**. **See Widmer**, 744 A.2d at 752. Additionally, Appellant's motive argument fails to show why these facts "are so clearly of greater weight" than those found credible by the jury. **See id.** at 752.

The trial court properly denied Appellant's motion for a new trial. The jury as fact finder found the Commonwealth's evidence credible and as such returned a guilty verdict. Appellant has not shown the trial court's denial of his motion was manifestly unreasonable, lacking in the application of law, nor a product of partiality, prejudice, bias, or ill will. **See Widmer**, 744 A.2d at 753. We conclude the trial court did not abuse its discretion. **See id.** Accordingly, the judgment of sentence is affirmed.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/21/2020