**No. C-950**

**Rosa Lee Miller v. The People of the State of Colorado**

(566 P.2d 1059)

Decided July 25, 1977.

Rollie R. Rogers, State Public Defender, James F. Dumas, Jr., Chief Deputy, Mary G. Allen, Deputy, for petitioner.

J. D. MacFarlane, Attorney General, Jean E. Dubofsky, Deputy, Edward G. Donovan, Solicitor General, Thomas J. Tomazin, Assistant, for respondent.

*En Banc.*

MR. JUSTICE CARRIGAN delivered the opinion of the Court.

The defendant was found guilty of attempt to commit felony theft. 1971 Perm. Supp., C.R.S. 1963, 40-2-101 and 40-4-401(1)(a) and (d).[1] Her conviction was affirmed by the Court of Appeals.[2] We granted certiorari and now affirm the Court of Appeals.

On July 24, 1974, Harold King lost fourteen credit cards. The next day, the defendant telephoned King to say that she had found credit cards issued in his name. The defendant told King that she could sell the cards for two thousand dollars, but that if King would pay her one thousand dollars, she would return the cards to him.

A meeting was arranged between King and the defendant, and King notified the police. When King arrived at the meeting place, the defendant approached him, asked if he were King, and asked for the money. The police placed the defendant under arrest, and in searching a paper sack she carried, found several of King's credit cards. After having been advised of her rights, the defendant admitted having telephoned King.

It is important to bear in mind that the defendant was convicted of an *attempt* and not of a completed theft. The issue is whether the "thing of value" she attempted to obtain was worth $100 or more so as to render the

---

[1]C.R.S. 1963, as amended, was in effect at the time of the alleged crime.
[2]*People v. Miller*, 37 Colo. App. 294, 549 P.2d 1092 (1976).

offense a felony. If the "thing of value" was *not* the credit cards, but the $1,000 demanded as "ransom" for their return, there is no valuation problem. The statute declares that,

"A person commits theft when he knowingly obtains . . . control over any thing of value of another . . . by threat . . .; and:

"(a) Intends to deprive such other person permanently of the use or benefit of the thing of value. . . ."

1971 Perm. Supp., C.R.S. 1963, 40-4-401(1)(a).

█ Here there was an attempt knowingly to obtain control of King's $1,000 by the threat to sell the fourteen credit cards to others whose use of them would cause King great inconvenience and expense. In essence, there was an attempted theft of $1,000 by "threat." On this rationale the conviction can be affirmed without reaching the issues regarding valuation of the credit cards.[3]

The parties, however, not only at the trial, but also on appeal, treated valuation of the credit cards as the primary issue.

At trial, the defense presented evidence that the credit cards had no market value and that cardholders are not charged for replacement of lost cards. It was the defense theory that an attempt to commit felony theft could not be proved since the credit cards had no value or had value less than one hundred dollars.

In rebuttal, the prosecution presented testimony that the "street value" or "thieves' market" value for a credit card is between $25 and $200. Further, prosecution evidence indicated that one of King's lost cards could have been used for purchases up to $100 each without card company authorization. Evidence of rewards offered to merchants for the return of lost or stolen credit cards was also admitted.

The defendant argues that the trial court erred in admitting the prosecution's valuation evidence based on street value, purchase limits, and rewards. The defendant relies on ". . . the general rule that value in a theft case is market value, where market value is what a willing buyer will pay in cash to the true owner for the stolen item." *People v. Marques*, 184 Colo. 262, 268, 520 P.2d 113, 117 (1974). *See Noble v. People*, 173 Colo. 333, 478 P.2d 662 (1970).

Valuation of credit cards, however, presents a problem of first impression in this jurisdiction. In fact, no case has been cited to us, and we have found no case, which has considered whether "street value" evidence is admissible to prove the value of credit cards for purposes of theft prosecution.

---

[3]It should be noted, in considering the issue of the credit cards' value, that evidence of the defendant's "asking price" of $1,000 could be admitted on the issue of value. *State v. Moody*, 113 N.H. 191, 304 A.2d 374 (1973).

█ In closely related contexts, however, a strong line of authority has emerged which deals with this same valuation problem. Where there is no legal market, evidence of the illegal market price and other objective evidence may be considered. *United States v. Tyers,* 487 F.2d 828 (2d Cir. 1973); *United States v. Ditata,* 469 F.2d 1270 (7th Cir. 1972); *United States v. Devall,* 462 F.2d 137 (5th Cir. 1972); *Churder v. United States,* 387 F.2d 825 (8th Cir. 1968); *Jalbert v. United States,* 375 F.2d 125 (5th Cir. 1967); *United States v. Ciongoli,* 358 F.2d 439 (3d Cir. 1966); *United States v. Kramer,* 289 F.2d 909 (2d Cir. 1961); *Mance v. State,* 5 Ga. App. 229, 62 S.E. 1053 (1908); *People v. Colasanti,* 35 N.Y.2d 434, 322 N.E.2d 269 (1974).

In *Mance v. State, supra,* intoxicating liquor which could not be sold lawfully in Georgia was held to have a value. Similarly, in *People v. Colasanti, supra,* six hundred thousand tablets of an experimental drug were stolen. The drugs were provided free to hospitals and physicians and had no legal market price. The New York Court of Appeals held that illegitimate, as well as legitimate, market value could be shown.

Evidence of illegitimate market value was held admissible where blank stock certificates, having no legitimate market value, were stolen. *United States v. Ditata, supra.* The remaining federal cases cited above have allowed evidence of the "thieves' market" value for blank, stolen money orders.

█ Valuation of credit cards presents the same problem addressed by the foregoing cases, and we find the resolution adopted in those cases to be persuasive. It is absurd for one who has demanded $1,000 as the price for return of credit cards to contend that those cards have no value beyond their plastic content and the cost to print them. The "illegitimate market" provides thieves with the incentive to commit their crimes. Where the stolen item, such as a credit card, has no market value in lawful channels, we conclude that other objective evidence of value may be admitted, including evidence of the "illegitimate" market value.[4]

█ Evidence of the dollar amount which may be purchased by using the credit card without card company approval provides an objective means of evaluating the illegitimate market value of credit cards. *See United States v. Kramer, supra,* (permitting evidence that blank money orders could be filled in for any amount up to $100). The trial court did not err in permitting evidence of the $100 authorization-free purchase limit.

Affirmed.

---

[4] Values other than market value may be used in special circumstances. *See People v. Kolego,* 38 Colo. App. 191, 554 P.2d 712 (1976) (allowed evidence of the extrensic value of gold).