The PEOPLE of the State of Colorado, Plaintiff–Appellant, Cross–Appellee,

v.

Weldon Bruce McCOY, Defendant–Appellee, Cross–Appellant.

No. 86SA166.

Supreme Court of Colorado, En Banc.

Nov. 14, 1988.

Rehearing Denied Dec. 5, 1988.

Robert R. Gallagher, Jr., Dist. Atty.,
Manson C. Jolliffe, Bruce H. Rabun and
Richard H. Bloch, Deputy Dist. Attys., Lit-

tleton, for plaintiff-appellant, cross-appellee.

William J. Fritsche, Basalt, for defendant-appellee, cross-appellant.

LOHR, Justice.

A jury found the defendant, Weldon Bruce McCoy ("McCoy" or "the defendant"), guilty of one count of theft by receiving, § 18–4–410, 8 C.R.S. (1978). The Arapahoe County District Court treated the offense as a class 2 misdemeanor and sentenced McCoy to a term of three months in the Arapahoe County Jail, with two months suspended. The People appeal from the judgment of conviction, arguing that McCoy should have been convicted and sentenced for a class 4 felony. McCoy cross-appeals, contending that the evidence of the value of the items stolen was insufficient to allow the case to go to the jury, and that the jury instructions were inadequate to enable the jury to determine the value of the items stolen. We affirm the conviction, but reverse the sentence for a class 2 misdemeanor and remand the case to the district court with directions to resentence the defendant for conviction of a class 4 felony.

## I.

The transaction for which the defendant was charged and convicted of theft by receiving arose from a "reverse sting" operation of the Arapahoe County Sheriff's Department. Late in the evening of April 18, 1985, an Arapahoe County Sheriff's Department informant, James Germany, contacted Sharon Davis, an acquaintance of the defendant, to see if she was interested in purchasing a diamond ring. Germany and Davis agreed to meet in the parking lot of the 7–11 store at Mississippi Avenue and Parker Road in Arapahoe County. Davis then called the defendant to ask for a ride to the 7–11 store, and he agreed to take her there.

The defendant and Davis arrived at the 7–11 store shortly after 1:00 a.m. on April 19. Germany and James McCord, an investigator with the Arapahoe County Sheriff's Department, were already there. Davis gave the defendant $350 to purchase the ring for her. While Davis and the defendant remained in their car, McCord and Germany approached them. When the defendant asked about the ring, McCord told him instead that he had two Pentax remote-control video cassette recorders (VCRs) which he had taken from a warehouse. In fact, the VCRs were on loan to the Arapahoe County Sheriff's Department from the Pentax Corporation for use in undercover operations. McCord told the defendant that the VCRs "go for about $1200" each but he would sell them for $300 for both. After the defendant looked at the VCR boxes in the rear of McCord's vehicle, he returned to his car and consulted with Davis. Davis told him to buy the VCRs with the money she had given him for the ring. The defendant then told McCord to place the boxes in the trunk of the defendant's car, and he gave McCord $300. As Davis and the defendant left, they were arrested by other officers who had been monitoring the exchange.

On April 24, 1985, the defendant was charged with one count of theft by receiving,[1] § 18–4–410, 8 C.R.S. (1978), a class 4 felony where the value of the item involved is $200 or more but less than $10,000. The defendant entered a plea of not guilty, and a jury trial was held from February 3 to 5, 1986.

On July 1, 1985, between the time the defendant was charged and the time of his trial, an amended section 18–4–410 went into effect. Ch. 131, secs. 8, 19, 1984 Colo. Sess.Laws 535, 537, 540. The amended section 18–4–410 provided that where the value of the item involved is $50 or more but less than $300, theft by receiving is a class 2 misdemeanor, and where the value of the item involved is $300 or more but less than $10,000, theft by receiving is a class 4 felony. *Id.* sec. 8, § 18–4–410(3)

---

1. The defendant was also charged with one count of conspiracy, § 18–2–201, 8B C.R.S. (1986). At trial, the district court granted the defendant's motion for judgment of acquittal on the conspiracy charge at the conclusion of the People's case on the grounds that the People had failed to present a prima facie case of conspiracy.

and (4) at 537. The effect of this amendment was to raise by $100 the minimum value necessary to support a conviction of a class 4 felony for theft by receiving. The act amending section 18–4–410 also provided that the amendments "shall apply to acts committed on or after" the effective date of July 1, 1985. *Id.* sec. 19 at 540.

In the verdict form, the court instructed the jury to answer a special interrogatory determining the value of the items involved in the theft by receiving. The jury found the defendant guilty, and further found that the value of the VCRs he had received was $1200. Prior to jury deliberations, the court had stated to counsel that if the jury found the defendant guilty, the court would impose a sentence for a class 2 misdemeanor since it must consider the "ameliorative benefit" of the new legislation even though the defendant was convicted under the prior statute.[2] Accordingly, on April 2, 1986, the court sentenced the defendant for a class 2 misdemeanor.

### II.

The People argue that the district court erred by sentencing the defendant for a class 2 misdemeanor instead of a class 4 felony. We agree.

■ We have previously held that a defendant should receive the benefit of amendatory legislation mitigating the penalties for crimes committed prior to the new legislation when the amendatory legislation expressly provides for retroactive application. *Naranjo v. District Court*, 189 Colo. 21, 536 P.2d 36 (1975); *People v. Thorton*, 187 Colo. 202, 529 P.2d 628 (1974); *People v. Thomas*, 185 Colo. 395, 525 P.2d 1136 (1974). The basis for these decisions was the provisions of section 18–1–410(f)(I), 8B C.R.S. (1986), and Crim.P. 35(c)(1) regarding postconviction remedies. *See People v. Macias*, 631 P.2d 584, 587 (Colo. 1981); *People v. Collyer*, 736 P.2d 1267, 1268 (Colo.App.1987). These provisions allow postconviction review of a sentence when "there has been significant change in

the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." § 18–1–410(f)(I); *see also* Crim.P. 35(c)(1) (procedural rule implementing postconviction remedy provided for in § 18–1–410(f)(I)).

Our cases also establish that a defendant does not receive any ameliorative benefit when retroactive application of the amendatory legislation is clearly not intended by its own terms. *People v. Macias*, 631 P.2d 584, 587 (Colo.1981) (defendant not entitled to benefit of amendatory legislation where legislation provides that it "shall apply to offenses committed on or after" the effective date); *People v. Stewart*, 626 P.2d 685 (Colo.1981) (defendant not entitled to benefit of amendatory legislation where legislation provides that it "shall not apply to offenses committed prior to" effective date); *People v. Lopez*, 624 P.2d 1301 (Colo.1981) (same); *see People v. Collyer*, 736 P.2d 1267, 1269 (Colo.App.1987) (defendant not entitled to retrospective application of misdemeanor theft statute when statute explicitly applied to offenses committed after effective date); § 2–4–202, 1B C.R.S. (1980) ("A statute is presumed to be prospective in its operation."); *see also* § 2–4–303, 1B C.R.S. (1980) (repeal or amendment of criminal statute does not affect liability incurred for acts committed while original statute was still in force).

■ In the instant case, the legislation provided that the amendments to the theft by receiving statute "shall apply to acts committed on or after" July 1, 1985, the effective date of the legislation. Ch. 131, sec. 19, 1984 Colo.Sess.Laws 535, 540. Nothing in the statute suggests a retroactive application; instead, as in *Macias*, the language of the effective date clause makes it clear that the amendatory legislation is to have prospective application only. "When the language of a statute is clear, we must give the statute effect as written." *Macias*, 631 P.2d at 587. Because

---

**2.** The trial court did not elaborate on the reasoning that led to the conclusion that it would be necessary to sentence the defendant for a class 2 misdemeanor conviction rather than a class 4 felony if he were found guilty.

the amendment applies to acts committed on or after July 1, 1985, and because the defendant committed the offense on April 19, 1985, the trial court erred in applying the amendment to sentence the defendant for a class 2 misdemeanor.

■ Moreover, regardless of whether the former or amended version of section 18–4–410 is applied, sentencing for a class 4 felony is required in this instance because the jury returned a special interrogatory finding the value of the items involved in the theft by receiving was $1200. This amount is well above both the $200 minimum for a class 4 felony under the former statute and the $300 minimum for a class 4 felony under the amended statute. Therefore, regardless of which statute the district court applied, the special jury finding made it necessary to impose a sentence for a class 4 felony. Because of this finding, there is no ameliorative benefit in the amended legislation to apply to the defendant's sentencing. Although McCoy challenges the sufficiency of the evidence and the jury instructions to support this finding, we conclude below that both the evidence and instructions were sufficient.

Lastly, McCoy contends that the People waived their argument that the former sentencing statute applied. The defendant asserts that the People argued before the district court that he was entitled to the ameliorative benefit of the amended statute. However, the record reflects that the People merely expressed their view to the district court that the amended statute would apply if the value of the item involved was between $200 and $300. Thus, the People requested the special interrogatory to eliminate any potential confusion. Moreover, the record is clear that the People timely and repeatedly objected to the district court's pronounced intention to sentence the defendant for a class 2 misdemeanor. Accordingly, the People did not waive their argument on the sentencing issue by the position they advanced in the district court.

In sum, the former section 18–4–410 applied to the defendant's crime since it was committed prior to the effective date of the amended statute and the amended statute clearly indicated that its effect would be prospective only. Furthermore, the jury's special finding requires sentencing for a class 4 felony regardless of whether the former or amended statute is applied. Therefore, the trial court erred in sentencing the defendant for a class 2 misdemeanor.

### III.

In his cross-appeal, McCoy argues that there was insufficient evidence of the value of the items involved to support his conviction. The defendant contends that no adequate evidence of the market value of the items was presented, and that the district court impermissibly allowed evidence of "street value," i.e., the amount the defendant paid for the items, to be used to establish the value of the VCRs. We disagree with the defendant's arguments and conclude that the evidence was sufficient and that the district court did not err by allowing evidence of street value.

■ The general rule is that "[t]he test of value is the reasonable market value of the stolen article at the time of the commission of the alleged offense." *People v. Austin*, 185 Colo. 229, 233, 523 P.2d 989, 992 (1974). In *Miller v. People*, we held that "[w]here the stolen item, such as a credit card, has no market value in lawful channels, we conclude that other objective evidence of value may be admitted, including evidence of the 'illegitimate' market value." 193 Colo. 415, 418, 566 P.2d 1059, 1061 (1977). The defendant argues that under *Miller*, street value evidence may be used *only* when no evidence of market value is available. However, *Miller* does not support this proposition, nor have our other cases applied such a restrictive standard to the evidence allowed to show value.

In *Burns v. People*, 148 Colo. 245, 250–51, 365 P.2d 698, 700–01 (1961), we concluded that evidence of the amount paid for stolen goods was sufficient by itself to demonstrate value in a theft by receiving case even where a legitimate market existed for the stolen goods. *See People v.*

*Williams,* 654 P.2d 319, 322–23 (Colo.App. 1982) (evidence of amount defendant paid for stolen goods held sufficient to establish fair market value, i.e., a "stolen goods market" value); *see also State v. Moody,* 113 N.H. 191, 304 A.2d 374, 375 (1973) (evidence of amount paid to defendant for stolen item is relevant to determination of value), *cited with approval in State v. Hammell,* 128 N.H. 787, 519 A.2d 307, 309 (1986).

■ The cases cited above demonstrate that alternative methods of showing value are allowed in a range of circumstances, and not only, as the defendant urges, in cases where no legitimate market for the stolen items exists. The evidence presented by the People here satisfies the standard for sufficient evidence of value developed in our previous cases. Investigator McCord testified that the defendant gave him $300 for the VCRs. This uncontroverted testimony is competent evidence of the "street value" for the items involved. *See Miller,* 193 Colo. at 417 n. 3, 418, 566 P.2d at 1060 n. 3, 1061; *Burns,* 148 Colo. at 251, 365 P.2d at 701; *Williams,* 654 P.2d at 323; *Moody,* 304 A.2d at 375. Additionally, Investigator McCord testified that the VCR units were worth $1200 each. Since the Arapahoe County Sheriff's Department had lawful possession and control of the VCRs on loan from the Pentax Corporation, Investigator McCord was competent to testify regarding the value of the VCRs as an owner[3] of the items involved. *See, e.g., Rodriguez v. People,* 168 Colo. 190, 193, 450 P.2d 645, 647 (1969) (owner is always competent to testify as to value); *Burns,* 148 Colo. at 251, 365 P.2d at 701 (same). Thus, both the street value and market value evidence were properly allowed by the district court. McCord's uncontroverted testimony as to the value and the price paid by the defendant for the VCRs provided sufficient evidence of the value of the VCRs.

■ The defendant also argues that the evidence of value is insufficient because only photographs of the VCR factory-sealed boxes and not the actual VCRs were introduced into evidence.[4] However, "the presence of this property in court was not necessary because its connection with the defendant was otherwise amply demonstrated by other evidence in the case." *Rodriguez v. People,* 168 Colo. 190, 193, 450 P.2d 645, 647 (1969) (photographs of items stolen supply sufficient evidence in theft case); *Williams,* 654 P.2d 319, 323 (Colo.App.1982) (use of photographs in theft by receiving case does not violate best evidence rule); *see generally* Annotation, *Admissibility of Photographs of Stolen Property,* 94 A.L.R.3d 357, 372–82 (1979 & 1988 Supp.) (large majority of jurisdictions allow photographs as evidence of stolen items).

Additionally, the defendant contends that there was no evidence to show that the boxes depicted in the photographs actually contained VCRs. Investigator McCord testified that the boxes contained two VCR units on loan from the Pentax Corporation, and that they were "factory sealed" when the defendant purchased the units. Although McCord testified that he did not open the boxes, there was no conflicting evidence presented to show that the boxes did not contain the two VCR units. Considering McCord's uncontroverted testimony as to the contents of the boxes, the evidence was sufficient for the jury to find that the boxes depicted in the photographs contained two VCRs. *See People v. Tumbarello,* 623 P.2d 46, 49 (Colo.1981) (in reviewing sufficiency of evidence, appellate court views evidence in light most favorable to prosecution and will not set aside conviction because different conclusions

---

3. *See Kelley v. People,* 166 Colo. 322, 327–28, 443 P.2d 734, 737 (1968) (in theft case, "one may be taken as the owner who was in peaceable possession of" item involved).

4. For acts committed on or after July 1, 1985, section 18–4–415, 8B C.R.S. (1986), provides that "photographs ... of property over which a person is alleged to have exerted unauthorized con-

trol or otherwise to have obtained unlawfully are competent evidence" if the photographs are otherwise admissible under the rules of evidence. Ch. 126, sec. 3, § 18–4–413, 1985 Colo. Sess.Laws 576, 577. This section does not apply to the defendant since the VCR transaction occurred prior to July 1, 1985.

might be drawn from evidence); *People v. Albright*, 722 P.2d 430, 431 (Colo.App.1986) (same). Thus, we conclude that the People's use of photographs of the VCR boxes instead of introducing the actual VCRs did not impair the sufficiency of the evidence.

### IV.

The defendant contends that the district court erred in submitting the special interrogatory on value to the jury without instructing the jury as to how value should be determined. Thus, he argues, the jury's determination of value is based on speculation and must be set aside. We disagree.

■ The defendant first attempts to demonstrate that the jury verdict was based on speculation by relying on an affidavit from the jury foreman explaining that the $1200 finding of the jury was reached "as a visible protest to what we [the jury] felt was an injustice to" the defendant because the jury believed that Davis, not the defendant, was the truly culpable person. It is well established, however, that a juror's affidavit that attempts to explain the mental processes of the jury cannot be used to impeach a jury verdict. *E.g., Neil v. Espinoza*, 747 P.2d 1257, 1261 (Colo.1987); *Aldrich v. District Court*, 714 P.2d 1321, 1323–24 (Colo.1986); *Santilli v. Pueblo*, 184 Colo. 432, 433–34, 521 P.2d 170, 171 (1974); *see also* CRE 606(b).[5] Accordingly, the defendant may not use the affidavit of the jury foreman to show that the jury's finding was based on speculation.

■ The defendant next argues that since the jury found the VCRs had a value of $1200, this finding must be based on speculation, for the only values presented

in evidence were $300 (the street value) and $2,400 (the market value), both based on McCord's testimony. However, the jury's duty is to consider these figures, determine the weight to be given to the testimony, and make its own finding as to value. *State v. Williams*, 199 Conn. 30, 505 A.2d 699, 705–06 (1986) (jury is not bound by testimony regarding fair market value when determining value of items stolen in larceny case); *State v. Moody*, 113 N.H. 191, 304 A.2d 374, 375 (1973) (proper for jury to reject all figures presented as to valuation and make their own determination of market value of stolen item based on evidence presented); *cf. People v. Rivas*, 197 Colo. 131, 136, 591 P.2d 83, 86 (1979) (it is jury's function to consider and determine weight to give to conflicting and inconsistent evidence). Thus, the mere fact that the jury's finding was different from any of the values presented to them does not demonstrate that the finding was based on speculation.

■ The defendant further argues that the form of the interrogatory[6] was erroneous since it did not instruct the jurors as to how value was to be determined. A review of all the instructions given to the jury reveals that they were instructed that one element of theft by receiving is that "the value of the thing involved is Two Hundred Dollars or more, but less than Ten Thousand Dollars," that they were to determine from the evidence presented whether the prosecution had proven every element beyond a reasonable doubt, that they should consider only the evidence in the case and reasonable inferences from this evidence, and that they should carefully consider the weight to be given to each witness' testimony. Overall, these instructions provided

---

5. CRE 606(b) provides:
   Upon an inquiry into the validity of a verdict or indictment, a juror may not testify as to any matter or statement occurring during the course of the jury's deliberations or to the effect of anything upon his or any other juror's mind or emotions as influencing him to assent to or dissent from the verdict or indictment or concerning his mental processes in connection therewith, except that a juror may testify on the question whether extraneous prejudicial information was improperly brought to the jurors' attention or whether any outside influence was improperly brought to bear upon any juror.

Nor may his affidavit or evidence of any statement by him concerning a matter about which he would be precluded from testifying be received for these purposes.

6. The special interrogatory, which was part of the verdict form, was:
   If you find the defendant guilty of Theft by Receiving, you must also complete this section.
   We, the jury, find that the value of the thing involved is _____ dollars. (Insert dollar amount.)

the necessary guidance to the jury that they were to base their finding of value on the evidence presented after evaluating the weight to be given to the testimony of each witness. *See State v. Williams,* 505 A.2d at 705–06; *Moody,* 304 A.2d at 375. We have previously upheld instructions requiring the jury to determine whether the value of stolen property exceeded a specified amount. *People v. Austin,* 185 Colo. 229, 237, 523 P.2d 989, 994 (Colo.1974). We also noted in *Austin* that a specific finding as to value is preferable to a general finding that the value exceeds the minimum amount required for conviction as a felony. *Id.* As in *Austin,* a finding of value here is critical to determine whether the theft by receiving is a felony or a misdemeanor. Therefore, considering the general instructions to the jury, the need for a determination of value, and our previous approval of specific findings of value in *Austin,* we conclude that the lack of specific instructions for determining value here did not make the special interrogatory improper.

We conclude that the evidence supported the jury's finding of $1200 for the value of the VCRs, and thus the finding was not based solely on speculation. The defendant cannot use the jury foreman's affidavit to impeach this finding. The special interrogatory was consistent with our decision in *Austin.* Therefore, we hold that the district court did not err in giving the special interrogatory on value to the jury.

## V.

In sum, we hold that the district court erred in sentencing McCoy for a class 2 misdemeanor, that the evidence presented as to the value of the VCRs was sufficient to support the jury's findings, and that the district court did not err in submitting the special interrogatory on value to the jury. Accordingly, we affirm the conviction, but we reverse McCoy's sentence for a class 2 misdemeanor and remand the case to the district court with directions to resentence McCoy for conviction of a class 4 felony.