Opinions of the Colorado Supreme Court are available to the
public and can be accessed through the Judicial Branch's homepage at
http://www.courts.state.co.us. Opinions are also posted on the
Colorado Bar Association's homepage at http://www.cobar.org.

ADVANCE SHEET HEADNOTE
July 2, 2018

**2018 CO 66**

**No. 16SC661, People v. Stellabotte—Sentencing—Amendatory Statutes—Retroactive Application.**

The supreme court holds that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), C.R.S. (2017), unless the amendment contains language indicating it applies only prospectively. In this case, the defendant committed crimes that (at the time of the offenses) constituted class 4 felonies. But before the defendant had been convicted and sentenced, the General Assembly amended the statute to change the crime to a class 5 felony, with a correspondingly lower sentence. The amended statute did not say whether it applied prospectively or retroactively. But the trial court sentenced the defendant for two class 4 felonies under the old statute. Because the division of the court of appeals properly concluded the defendant should have received the benefit of the amended statute's ameliorative effects under section 18-1-410(1)(f) (providing relief where a defendant alleges that "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard"), the supreme court affirms the division's judgment.

## The Supreme Court of the State of Colorado
2 East 14th Avenue • Denver, Colorado 80203

## 2018 CO 66

**Supreme Court Case No. 16SC661**
*Certiorari to the Colorado Court of Appeals*
Court of Appeals Case No. 14CA1954

**Petitioner:**

The People of the State of Colorado,

v.

**Respondent:**

John Arthur Stellabotte.

**Judgment Affirmed**
*en banc*
July 2, 2018

**Attorneys for Petitioner:**
Cynthia H. Coffman, Attorney General
Kevin E. McReynolds, Assistant Attorney General
    *Denver, Colorado*

**Attorneys for Respondent:**
Law Office of Lynn C. Hartfield, LLC
Lynn C. Hartfield
    *Denver, Colorado*

**JUSTICE HOOD** delivered the Opinion of the Court.
**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.
**JUSTICE GABRIEL** does not participate.

¶1     Respondent John Stellabotte owned a towing company that he used to illegally tow cars and then demand payment from the owners.  At the time he did this, his thefts constituted a class 4 felony.  But before he had been convicted and sentenced, the General Assembly changed the theft statute to make the crime a class 5 felony, with a correspondingly lower sentence.  The amendment to the theft statute did not say whether it applied prospectively or retroactively.  Without any party bringing this statutory change to the trial court's attention, it sentenced Stellabotte, as relevant here, for two class 4 felony counts under the old theft statute.

¶2     Stellabotte appealed, arguing he should have been sentenced for two class 5 felonies under the amended statute.  A division of the court of appeals agreed, reversing on this point, albeit in a split opinion.  Because the statutory amendment was silent on its application, the majority reasoned that Stellabotte should have received the benefit of its ameliorative effects under section 18-1-410(1)(f), C.R.S. (2017), and a line of cases reaching the same result.  Judge Dailey disagreed, reasoning that ameliorative legislation applies only prospectively—under sections 2-4-202 and 2-4-303, C.R.S. (2017), and a different line of cases echoing that principle—unless the General Assembly indicates its intent for the legislation to apply retroactively.

¶3     In this opinion, we hold that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the amendment contains language indicating it applies only prospectively.  In reaching this conclusion, we clarify that our decision in People v. Thomas, 525 P.2d 1136 (Colo. 1974)

1

(allowing retroactive application of ameliorative statutory amendments under section 18-1-410(1)(f)[1]), remains good law and governs here. We further explain that section 18-1-410(1)(f)'s retroactive application for changes in criminal law acts as an exception to the general presumption of prospectivity that sections 2-4-202 and 2-4-303 provide. The division properly concluded that the theft amendment applies retroactively to cases involving convictions that were not final on the effective date of the amendment.

¶4     So, we affirm the division's judgment and remand for further proceedings consistent with this opinion.

## I. Facts and Procedural History

¶5     John Stellabotte owned and operated a towing company. In 2012, he illegally towed two cars valued between $1,000 and $20,000—demanding money from each owner for their return.

¶6     The People charged Stellabotte with, among other things, felony theft. At that time, Stellabotte's actions constituted a class 4 felony. But in 2013, the General Assembly amended the theft statute, lowering the classification of theft for items valued between $5,000 and $20,000 to a class 5 felony. The 2013 amendment is silent regarding whether it applies prospectively or retroactively. A year after this change, a jury found Stellabotte guilty of aggravated motor vehicle theft, two felony theft counts, and a

---

[1] We note that <u>Thomas</u> cited to the identically worded predecessor to section 18-1-410(1)(f)(I). 525 P.3d at 1137 (citing § 40-1-510(1)(f), C.R.S. (1973)). For clarity, we refer to the modern version (section 18-1-410(1)(f)) throughout this opinion.

2

misdemeanor theft count. And the trial court found Stellabotte to be a habitual offender, sentencing him to a concurrent twenty-four years for the two felony theft counts under the old theft statute.[2]

¶7 Neither the People nor Stellabotte brought the 2013 reclassification to the trial court's attention. But had Stellabotte been sentenced under the 2013 theft statute, he would have received twelve years, assuming the trial court sentenced the defendant concurrently.[3] Stellabotte appealed, arguing among other things that he should have received the benefit of the 2013 amendment's reclassification.

¶8 In a split, published opinion, a division of the court of appeals agreed, reversing in relevant part. Following People v. Boyd, 2015 COA 109, 395 P.3d 1128 (concluding that although Amendment 64 did not state a clear intent of retroactive application, it nevertheless applied retroactively to the defendant's conviction for possession of marijuana), aff'd on other grounds, 2017 CO 2, 387 P.3d 755, and People v. Russell, 2014 COA 21M, 396 P.3d 71 (same), aff'd on other grounds, 2017 CO 3, 387 P.3d 750, the majority concluded the amendment to the theft statute applied retroactively to Stellabotte's felony theft convictions under section 18-1-410(1)(f) because the

---

[2] Under the habitual offender statute, § 18-1.3-801, C.R.S. (2017), the trial court sentenced Stellabotte to four times the maximum presumptive sentence of six years for a class 4 felony, resulting in (among other things) a concurrent twenty-four year sentence for his two felony theft convictions at issue here.

[3] The maximum presumptive sentence for a class 5 felony is three years, § 18-1.3-401, C.R.S. (2017), which results in a twelve-year sentence under the habitual offender statute, § 18-1.3-801, on each count.

amendment was enacted while his case was pending in the trial court. Judge Dailey's dissent reasoned <u>Boyd</u> and <u>Russell</u> are inapposite because those cases concerned a constitutional amendment, not an amended statute. In his view, sections 2-4-202 and 2-4-203 and related precedent foreclose retroactive application of ameliorative criminal legislation unless the General Assembly clearly intends for it to be applied retroactively.

¶9 The People appealed and we granted certiorari[4] to review this case and a related case in <u>People v. Patton</u>, 2018 CO 67, __ P.3d __, which we also decide today.

## II. Standard of Review

¶10 This case involves questions of statutory interpretation, which we review de novo. <u>State Farm Mut. Auto. Ins. Co. v. Fisher</u>, 2018 CO 39, ¶ 12, 418 P.3d 501, 504.

## III. Analysis

¶11 With conflicting precedent and statutes supporting their divergent positions, the parties dispute whether the 2013 amendment to the theft statute applies retroactively. We start with an overview of the applicable cases, and clarify that our decision in <u>People v. Thomas</u>, 525 P.2d 1136 (Colo. 1974) (allowing retroactive application of ameliorative statutory amendments under section 18-1-410(1)(f)), remains good law and governs here. Next, we turn to the conflicting statutes at issue, and we explain why

---

[4] We granted certiorari to review the following issue:

> Whether the court of appeals erred in holding that an amendment to a statute that does not specify whether it applies prospectively or retroactively applies retroactively to cases that are pending when the amendment was enacted.

section 18-1-410(1)(f) controls in this case. Finally, we conclude that the theft amendment applies retroactively to cases involving convictions that were not final on the effective date of the amendment.

## A. <u>Thomas</u> Remains Good Law and Governs Here

¶12 The theft amendment is silent regarding whether it applies retroactively or prospectively, and the relevant legislative history offers no guidance on this point either. <u>See</u> ch. 373, sec. 1, § 18-4-401(2)(g), 2013 Colo. Sess. Laws 2195, 2195–96, 2202.

¶13 Both parties point to cases from this court that—at first blush—appear to support their sides. One line of cases follows this court's decision in <u>Thomas</u>, which holds defendants should receive the benefit of amendatory legislation that became effective at any time before the conviction became final on appeal. A different, more recent line of cases suggests that a defendant can't receive such a benefit unless the General Assembly clearly indicates its intent for the legislation to apply retroactively. <u>See</u> <u>Riley v. People</u>, 828 P.2d 254 (Colo. 1992).

¶14 The People argue that the division erred in concluding that the theft statute's amendments apply retroactively to lessen Stellabotte's sentence. They claim Colorado courts consistently rely on the presumption (articulated in the latter line of cases) that statutes apply prospectively unless the statute expressly states it applies retroactively. Stellabotte disagrees. He contends <u>Thomas</u> applies here and that the more recent cases upon which the People rely are inapposite.

5

¶15 To resolve this case we must delve into our precedent on whether ameliorative statutory changes apply retroactively to benefit criminal defendants whose convictions are not yet final on direct appeal.

¶16 In Thomas, the defendant was charged with attempted burglary, but before he was convicted and sentenced, the legislature changed the sentencing scheme, which lowered the degree of crime for his offense and thus, the maximum penalty he could have received. 525 P.2d at 1137. The statutory change didn't say whether it applied prospectively or retroactively. Ch. 121, § 40-2-101, 1972 Colo. Sess. Laws 414, 414–15. Regardless, the trial court convicted and sentenced the defendant under the old statute. Thomas, 525 P.2d at 1137. While his case was pending on direct appeal, the defendant filed a motion for post-conviction review, under the identically worded predecessor to section 18-1-410(1)(f)(I). Thomas, 525 P.2d at 1137. Section 18-1-410(1)(f)(I) provides relief where a defendant alleges that "there has been significant change in the law, applied to the applicant's conviction or sentence, allowing in the interests of justice retroactive application of the changed legal standard." Relying on that statutory provision, plus the identically worded predecessor to section 18-1-103(2), C.R.S. (2017),[5]

---

[5] Section 18-1-103(2) provides as follows:

> Except as otherwise provided by section 18-1-410, the provisions of this code do not apply to or govern the construction of, prosecution for, and punishment for any offense committed prior to July 1, 1972, or the construction and application of any defense to a prosecution for such an offense. Such an offense shall be tried and disposed of according to the provisions of law existing at the time of the commission thereof in the

this court reasoned the defendant was entitled to the benefit of the amendatory legislation. Thomas, 525 P.2d at 1137–38. The Thomas court further noted that the "view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law." Id. at 1138 (emphasis added and citations omitted).

¶17    And in People v. Thornton we extended the Thomas rule to apply to defendants seeking the benefit of ameliorative changes in sentencing laws on direct appeal. 529 P.2d 628, 628 (Colo. 1974). There, a month after the defendant's sentencing, the legislature changed the presumptive sentencing range from a set range to indeterminate. Id. This statutory change, like the one in Thomas, was silent on whether it applied prospectively or retroactively. Ch. 145, sec. 1, § 39-11-101, 1972 Colo. Sess. Laws 503, 503–04. Concluding that the defendant should benefit from the new indeterminate sentencing law, the Thornton court remarked that Thomas established that a "defendant is entitled to the benefits of amendatory legislation which mitigates penalties for crimes, when relief is sought before finality has attached to the judgment of conviction." 529 P.2d at 628.

¶18    Numerous cases throughout the 1970s applied the Thomas holding to provide convicted criminal defendants the benefit of amendatory legislation enacted before their convictions became final on appeal. See, e.g., People v. Griswold, 543 P.2d 1251, 1253

---

same manner as if this code had not been enacted. All pending actions shall proceed to final disposition in the same manner as if this code had not been enacted.

(Colo. 1975) (holding defendant was entitled to resentencing under an indeterminate sentencing scheme that was enacted after the date he committed his offense); People v. Truesdale, 546 P.2d 494, 497 (Colo. 1976) (same); Glazier v. People, 565 P.2d 935, 936 (Colo. 1977) (holding defendant was entitled to subsequent change from felony conviction to petty offense); People v. Bloom, 577 P.2d 288, 292 (Colo. 1978) (holding defendant was entitled to ameliorative benefits of July 1975 amendment that removed marijuana from list of narcotic drugs and reclassified it as a dangerous drug).

¶19     But then our articulation of the Thomas rule began to evolve. In People v. Macias, this court confronted legislation that lowered sentences for those convicted of selling narcotics. 631 P.2d 584, 585–87 (Colo. 1981). This legislation, however, expressly said it applied "to offenses committed on or after" July 1, 1979. Id. at 586. Despite the fact that the defendants in Macias had committed their crimes before the legislature enacted the amendatory sentencing legislation, the trial court sentenced them under the new statute, relying on Thomas. See id. at 585–86. We reversed, noting the trial court erred in sentencing them so because the statute was "clearly limited in application to offenses committed on or after July 1, 1979." Id. at 587.

¶20     Confronting ameliorative changes to the theft statute that stated the changes applied only prospectively, this court concluded that the defendant in People v. McCoy—like the defendants in Macias—could not receive the benefit of lower sentencing under the new statue. 764 P.2d 1171, 1174 (Colo. 1988). Curiously, however, we cited to Thornton and Thomas for the proposition that we had "previously held that

8

a defendant should receive the benefit of amendatory legislation mitigating the penalties for crimes committed prior to the new legislation when the amendatory legislation expressly provides for retroactive application." Id. (emphasis added). Citing to Thomas and Thornton for that proposition was strange because, as noted above, the statutory changes there were silent—not express—on whether they applied prospectively or retroactively. We also cited to Macias for the following proposition: "Our cases also establish that a defendant does not receive any ameliorative benefit when retroactive application of the amendatory legislation is clearly not intended by its own terms." Id.

¶21    And language we used in Riley v. People, a few years after McCoy, muddied the waters even further. In that case we confronted a criminal statute that expressly provided for only prospective application. Riley, 828 P.2d at 256. So, we held accordingly—no retroactive application. Id. at 259. Riley then cited to McCoy and Macias for the following proposition: "In subsequent cases we have emphasized that a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." Id. at 258 (emphasis added). But Riley appears to have flipped what we actually said in those cases. See McCoy, 764 P.2d at 1174 ("Our cases also establish that a defendant does not receive any ameliorative benefit when retroactive application of the amendatory legislation is clearly not intended by its own terms."); Macias, 631 P.2d at 587 ("[I]t is clear on its face that it applies only to offenses committed on or after July

9

1, 1979. When the language of a statute is clear, we must give the statute effect as written.").

¶22 So, this is where we're left: We've gone from the Thomas rule favoring retroactively applying ameliorative legislation to non-final convictions, to statements in Riley suggesting that retroactive relief remains unavailable unless the General Assembly expressly provides it. Compare Thomas, 525 P.2d at 1137, with Riley, 828 P.2d at 258.

¶23 The People argue this court's more recent cases in Macias, McCoy, and Riley govern because either (1) they abrogated Thomas or (2) Thomas's reach was merely limited to that specific time period because of the legislature's overhaul of Colorado's criminal code in 1972. Because the General Assembly revised the entire criminal code in 1972, the People reason Thomas's reach was limited to applying ameliorative aspects of the new criminal code to offenses committed before its effective date in order to achieve uniformity.

¶24 Stellabotte counters that Thomas and the cases following it remain good law because none of the latter cases overrule or abrogate Thomas. Plus, he argues that Macias, McCoy, and Riley are inapposite because the statutes at issue in those cases expressly stated that they applied only prospectively but the theft statute here, like those in the cases following Thomas, is silent on its application.

¶25 We agree with Stellabotte and conclude that Thomas remains good law and governs here for several reasons.

10

¶26    First, we think <u>Thomas</u> and <u>Thornton</u> provide a rule that gives convicted criminal defendants the benefit of amendatory legislation that became effective at any time before the conviction became final on direct appeal under section 18-1-410(1)(f). We are unpersuaded by the People's efforts to limit <u>Thomas</u>'s rule to the 1972 code, because we have applied the <u>Thomas</u> rule to ameliorative statutory amendments that the General Assembly enacted even after the 1972 criminal code overhaul.  <u>See, e.g.</u>, <u>Bloom</u>, 577 P.2d at 292 (holding defendant was entitled to ameliorative benefits of July 1975 amendment that removed marijuana from list of narcotic drugs and reclassified it as a dangerous drug); <u>Glazier</u>, 565 P.2d at 936 (giving defendant benefit of ameliorative 1975 legislation that reduced his sentence for marijuana possession from five-to-eight years in prison to a $100 fine).

¶27    And <u>Thomas</u> didn't couch its holding on retroactivity in the narrow terms of the then-new 1972 criminal code.  Instead, <u>Thomas</u> and several cases following it spoke generally about how retroactivity for statutory amendments ameliorating the penalty for crimes committed before the legislation was enacted <u>also had support in the common law</u>.  <u>See, e.g.</u>, <u>Thomas</u>, 525 P.2d at 1138 ("The view that amendatory legislation mitigating the penalties for crimes should be applied to any case which has not received final judgment finds substantial support in the common law."); <u>Truesdale</u>, 546 P.2d at 497 ("Under our decision in [<u>Thomas</u>,] a defendant is entitled to the benefits of amendatory legislation which mitigates penalties for crimes when the relief is sought before finality has attached to the judgment of conviction.  Accordingly, on remand,

11

defendant should be re-sentenced."); Glazier, 565 P.2d at 936 ("As we have repeatedly held, a defendant is entitled to the benefits of amendatory legislation when relief is sought before finality has attached to the judgment of conviction.").

¶28    Second, we think (and now clarify) that our statements in Riley and McCoy—that retroactivity occurs only if the General Assembly expressly provides it—are dicta and thus don't govern here. The People maintain those cases clearly announced a bright-line rule that "a defendant is not entitled to the ameliorative effects of amendatory legislation if the General Assembly has not clearly indicated its intent to require such retroactive application." Riley, 828 P.2d at 258. But as Stellabotte points out, Macias, McCoy, and Riley confronted a different set of facts. The statutes there, unlike the silent one here, expressly provided for only prospective application. Indeed, when looking at the expressly prospective statute in Macias, this court observed that when "the language of a statute is clear, we must give the statute effect as written." 631 P.2d at 587. Thus, because the statutes in Riley, McCoy, and Macias expressly provided that they applied prospectively, we clarify that our statements in those cases about the legislature's need to clearly indicate its intent for retroactive application were "not necessary to the decisions in those cases [and were] dicta that do[] not control the case before us." Town of Eagle v. Scheibe, 10 P.3d 648, 652 (Colo. 2000). To the extent the dicta in Riley and McCoy conflict with the rule in Thomas, we disavow that language.

12

¶29    Finally, none of the latter cases (<u>Macias</u>, <u>McCoy</u>, and <u>Riley</u>) purported to (nor actually do) overrule or abrogate <u>Thomas</u>.  Despite the People's best arguments to the contrary, both lines of cases can be reconciled because <u>Macias</u>, <u>McCoy</u>, and <u>Riley</u> ultimately answered a different question: What do we do when the General Assembly expressly provides that a statute applies only to offenses committed "on or after" a certain date?  And based on our principles of statutory interpretation, <u>Macias</u>, <u>McCoy</u>, and <u>Riley</u> were correct—we apply expressly prospective statutes only prospectively.  But the statutes at issue in the <u>Thomas</u> line of cases—like the theft statute at issue here— were silent on prospectivity.  And when the General Assembly does not indicate statutory changes are to apply only prospectively, then, under <u>Thomas</u>, defendants receive the benefit of the amendatory legislation to their non-final convictions.[6]

¶30    Despite clearing up this confusion in our precedent, we aren't finished.  The People highlight sections 2-4-202 and 2-4-303, which provide a presumption that statutes apply only prospectively.  And our precedent has thus far failed to address how we should read section 18-1-410(1)(f) in light of the presumptions in those statutes.  So, we turn to the following question next: Do the general presumptions of prospective application in sections 2-4-202 and 2-4-303 undermine section 18-1-410(1)(f)?

---

[6] We reach this result based on our reading of <u>Thomas</u> and related cases, and thus, need not discuss our decisions in <u>Boyd</u>, 2017 CO 2, ¶ 1, 387 P.3d at 755, and <u>Russell</u>, 2017 CO 3, ¶ 1, 387 P.3d at 751.  Therefore, we agree with the division's conclusion, albeit based on different precedent.

## B. Section 18-1-410(1)(f) Is an Exception to the Presumptions of Prospective Application in Sections 2-4-202 and 2-4-303

¶31    The People point to sections 2-4-202[7] and 2-4-303[8] to argue that the theft statute amendment here applies prospectively.  Stellabotte disagrees, arguing instead that sections 2-4-202 and 2-4-303 don't apply here.

¶32    To resolve this disagreement, we again turn to well-established principles of statutory interpretation.  "In construing a statute, we seek to give effect to the General Assembly's intent by according words and phrases their plain and ordinary meanings." Fisher, ¶ 12, 418 P.3d at 504.  And we "must read and consider the statutory scheme as a whole to give consistent, harmonious and sensible effect to all its parts."  Martin v. People, 27 P.3d 846, 851 (Colo. 2001) (internal quotation marks and citation omitted). "We must adopt a construction that avoids or resolves potential conflicts, giving effect to all legislative acts, if possible."  Huber v. Colo. Mining Ass'n, 264 P.3d 884, 892 (Colo. 2011).  But if conflicting statutes can't be reconciled, we have adopted a canon of statutory construction that a specific statutory provision "acts as an exception to that general provision, carving out a special niche from the general rules to accommodate a

---

[7] "A statute is presumed to be prospective in its operation."

[8] "The repeal, revision, amendment, or consolidation of any statute or part of a statute or section or part of a section of any statute shall not have the effect to release, extinguish, alter, modify, or change in whole or in part any penalty, forfeiture, or liability, either civil or criminal, which shall have been incurred under such statute, unless the repealing, revising, amending, or consolidating act so expressly provides . . . ."  (Emphasis added.)

14

specific circumstance." Martin, 27 P.3d at 852; see also § 2-4-205, C.R.S. (2017) ("If a general provision conflicts with a special or local provision, it shall be construed, if possible, so that effect is given to both. If the conflict between the provisions is irreconcilable, the special or local provision prevails as an exception to the general provision, unless the general provision is the later adoption and the manifest intent is that the general provision prevail.").

¶33    In applying these principles, we conclude that section 18-1-410(1)(f) prevails. Subsection 18-1-410(1)(f)(I) provides for retroactive application of significant change in the law to a defendant's conviction or sentence but, under subsection (II), during only direct appeal, before the conviction is final. Thus, it applies only to criminal prosecutions and during only a narrow procedural timeframe. See § 18-1-410(1)(f). It follows, then, that section 18-1-410(1)(f)(I)–(II) is a more specific provision than the broad presumptions of prospective application set out in sections 2-4-202 and 2-4-303. See § 2-4-202 ("A statute is presumed to be prospective in its operation."). And as the more specific provision, section 18-1-410(1)(f) acts as an exception to sections 2-4-202 and 2-4-303. If sections 2-4-202 and 2-4-303 controlled, then section 18-1-410(1)(f) would be rendered superfluous. By interpreting section 18-1-410(1)(f) as an exception to those two broader statutes, we "give full and sensible effect to the entire statutory scheme." Martin, 27 P.3d at 852.

¶34    The People argue we could reconcile the conflicting statutes by simply viewing section 18-1-410(1)(f) as only a procedural mechanism that allows defendants to benefit

from amendatory legislation when the General Assembly expressly makes it retroactive. We disagree. The People point to nothing in section 18-1-410's plain language that would support such a narrow reading. And adopting such a reading would ignore cases like Thomas where we applied section 18-1-410 to provide retroactive application when the amendatory statute was silent on retroactivity.

¶35 Accordingly, we conclude section 18-1-410(1)(f) serves as an exception to the general presumption of prospectivity that sections 2-4-202 and 2-4-303 provide.

## C. Application

¶36 Here, the parties agree that Stellabotte committed the thefts before the amendment to the theft statute, but was convicted and sentenced to (among other things) two counts of felony theft after the amendment was enacted. As a habitual offender, the court sentenced Stellabotte to twenty-four years. But under the 2013 amendment, Stellabotte would have received just twelve years, assuming the court sentenced the defendant concurrently. As noted above, the 2013 amendment to the theft statute is silent as to its application. See ch. 373, sec. 1, § 18-4-401(2)(g), 2013 Colo. Sess. Laws 2195, 2195–96, 2202. So, under Thomas and section 18-1-410(1)(f), we conclude Stellabotte should have received the benefit of the 2013 amendment, thus receiving a twelve-year sentence on each of the two theft counts following his adjudication as a habitual offender under section 18-1.3-801. Like the division majority below, we note that our analysis and holding applies only to Stellabotte's felony theft convictions—not his aggravated motor vehicle theft or misdemeanor theft convictions.

16

¶37     We note that our decision today is a narrow one.  Our holding does not provide relief to simply anyone who has been sentenced under a provision that has since been changed.  Instead, relief under an amended statute is available only to those defendants whose convictions were not final when the amendment was enacted.  See § 18-1-410(1)(f)(II) ("The ground set forth in this paragraph (f) may not be asserted if, prior to filing for relief pursuant to this paragraph (f), a person has not sought appeal of a conviction within the time prescribed therefor or if a judgment of conviction has been affirmed upon appeal.").  Moreover, the General Assembly, of course, remains free to limit any future amendatory legislation's reach by including language specifying prospective application that would then foreclose retroactive relief under section 18-1-410(1)(f).  See Macias, 631 P.2d at 587.

## IV.  Conclusion

¶38     Our decision in People v. Thomas, 525 P.2d 1136 (Colo. 1974), remains good law and governs here.  Section 18-1-410(1)(f)'s retroactive application for changes in criminal law acts as an exception to the general presumption of prospectivity that sections 2-4-202 and 2-4-303 provide.  Accordingly, we hold that ameliorative, amendatory legislation applies retroactively to non-final convictions under section 18-1-410(1)(f), unless the amendment contains language indicating it applies only prospectively.  Because the 2013 amendment to the theft statute in this case is silent on whether it applies prospectively, Stellabotte should have received the benefit of retroactive application in his sentencing.

17

¶39    Therefore, we affirm the judgment of the division and remand for further proceedings consistent with this opinion.

**CHIEF JUSTICE COATS** dissents, and **JUSTICE BOATRIGHT** joins in the dissent.

CHIEF JUSTICE COATS, dissenting.

¶40     I dissent from the direction taken by the majority today not because it involves a matter of substantial import to the jurisdiction, or because it erroneously construes constitutional provisions that might unduly tie the hands of the legislature, or even because it misstates principles of construction that might adversely affect our interpretations of law in the future.  The presumption, or better mandate, set out by the majority today with regard to the retroactive application of amendatory criminal legislation can easily be changed by the legislature itself if it so chooses, and applications of this presumption not intended by the legislature can easily be avoided by simply indicating with greater particularity the acts to which amendatory legislation is intended to apply.  I dissent rather because I believe the majority fails to appreciate the sophistication of the distinctions made by those preceding us in this lengthy debate and, as a result, mischaracterizes both their reasoning and our prior case law, unfortunately breathing new life into a holding that was always problematic but had by its own terms finally become moribund without having to actually be overruled.

¶41     As an overarching matter, I do not agree that after our decision in People v. Thomas, 525 P.2d 1136 (Colo. 1974), a second line of cases developed for the counter proposition that "retroactivity occurs only if the General Assembly expressly provides it," which proposition, according to the majority, must now be rejected as dicta.  See maj. op. at ¶ 28.  Not only do I disagree that this proposition was dicta in People v. Macias, 631 P.2d 584 (Colo. 1981), People v. McCoy, 764 P.2d 1171 (Colo. 1988), and Riley v. People, 828 P.2d 254 (Colo. 1992), the cases to which it is attributed by the

1

majority; I disagree that it even conflicts with the holding of Thomas or alters it in any way.  Whether or not Thomas may for other reasons be subject to criticism, its holding rests entirely on its conclusion that "[s]ection 40-1-510(1)(f) [(currently 18-1-410(1)(f)(I))] expressly provides for the application of the changed legal standards."  Thomas, 525 P.2d at 1138 (emphasis added).  That being the case, I do not believe the characterizations of it in these later cases were curious, strange, or muddied the waters further, as does the majority, but rather that they very naturally addressed the question of precisely which "changed legal standards" Thomas referenced when it found that section 510(1)(f) "expressly provided" for their retroactive application, and that these cases limited the holding of Thomas accordingly.

¶42    Although never overruled, the thinly supported, bare majority opinion in Thomas, representing as it does one of our earliest interpretations of the new 1972 Colorado Criminal Code, and particularly the applicability of its substantially restructured crimes and punishments to pre-1972 offenses, has presented interpretational dilemmas since its very announcement.  Apart from its assertion, with questionable examples from other jurisdictions, that its interpretation found support in the common law, see id. at 1138, Thomas offered precious little justification for its statutory construction, instead concentrating on distinguishing itself from this court's holding some nine months earlier in People v. Herrera, 516 P.2d 626 (Colo. 1973), on the grounds that Thomas, unlike Herrera, filed for postconviction review before his sentence had become final, see Thomas, 525 P.2d at 1137.  Because our holding in Herrera was concerned only with the extent to which the discretionary reduction of a

2

final sentence by the judiciary would conflict with the power of commutation constitutionally reserved to the Governor, Herrera, 516 P.2d at 627, the rationale for the Thomas majority's holding—that the sentence reduction in that case was not discretionary with the court at all—has always remained unclear. If, as the Thomas majority appeared to hold, retroactive application of the ameliorative sentencing provisions of the new 1972 code was statutorily mandated, the defendant's initial sentence in that case, imposed after amendment of the sentencing statute, was clearly illegal and subject to correction at any time, regardless of finality.[1]

¶43    In any event, there can simply be no question that Thomas did not hold, as the majority seems to find, that the retroactive application of ameliorative sentencing legislation in this jurisdiction is mandated in the absence of express legislative provision that it apply only prospectively. Instead Thomas held that the defendant in that case was entitled to the retroactive application of the changed legal standards of the new code precisely because that was the result expressly provided for by the legislature. Despite strenuous objection from the three-justice dissent, especially in light of a recent amendment to section 510(1)(f) changing the pertinent statutory language from "Requiring in the interest of justice" to "Allowing in the interest of justice," see Thomas, 525 P.2d at 1138 (Lee, J., dissenting), the Thomas majority found that section 510(1)(f) of

_____

[1] The amendment to 510(1)(f) limiting its assertion as a ground for review of sentences that had not yet become final on direct appeal was added after and as a result of Herrera and Thomas, rather than as a cause of them. See ch. 56, sec. 28, § 18-1-410, 1975 Colo. Sess. Laws 205, 211.

the new code "expressly provide[d] for the application of the changed legal standards," meaning, as it further explained, that such application was mandatory, see id. at 1138.

¶44     Significantly, however, the Thomas majority did not find this express provision in section 510(1)(f), a statute which, by its own terms merely provided a procedural vehicle for postconviction relief, to be sufficient in itself to overcome the more express presumptions specified in the legislature's own statement of its drafting conventions, § 2-4-202, C.R.S. (2017), or the legislature's express prohibition against retroactive application of the new Colorado Criminal Code, see ch. 152, sec. 1, § 40-1-103(2), 1973 Colo. Sess. Laws 533, 533.  Rather, it found the express provision in section 510(1)(f) dispositive of the applicability of the "changed legal standards" of the 1972 code to the defendant in that case only because section 40-1-103(2) (currently 18-1-103(2)), barring application of the new code to offenses committed before July 1, 1972, had recently been amended by the addition of the words, "Except as otherwise expressly provided by section 40-1-510 . . . ."  See Thomas, 525 P.2d at 1138.  Notwithstanding its dearth of legal justification in other respects, Thomas refers to the "changed legal standards" of the new code at three separate points in its rationale and finds the procedural provision of section 510(1)(f) meaningful only because of its incorporation in section 103(2), effectively dictating the applicability of the new code to prior offenses. See id.

¶45     Our later cases, which the majority understands to have departed in various ways from Thomas, and ultimately to have "flipped" the Thomas rule favoring retroactively applying ameliorative legislation to non-final convictions by instead announcing a rule that retroactive relief remains unavailable unless expressly provided

4

for, maj. op. at ¶ 21, are better understood as merely explaining that the "express[] provi[sion]" for retroactive application found by the <u>Thomas</u> majority in sections 103 and 510(1)(f) in no way adversely affected subsequent statutory amendments themselves indicating otherwise. <u>Riley</u>, in particular, explained that in <u>Thomas</u> we found the defendant entitled to "the benefits of the new legislation that became effective prior to his initial sentencing" for the reason that this result was "consistent with legislative intent." <u>Riley</u>, 828 P.2d at 258. By contrast, we explained, in subsequent cases we emphasized that a defendant is not so entitled if the legislature has not similarly clearly indicated its intent to require retroactive application. <u>Id.</u> Rather than flipping a presumption of legislative intent, in <u>Riley</u> we merely clarified that retroactive application of ameliorative criminal legislation is a matter of legislative intent, but that the legislative intent found in <u>Thomas</u> to have been "clearly provided" by sections 103 and 510, did not control the outcomes in those subsequent cases. <u>See</u> <u>id.</u>

¶46 Because we did not suggest any conflict between the legislative intent to require retroactive application that we found in <u>Thomas</u> and the legislative intent to require only prospective application we found in <u>Riley</u>, which would have entailed resolution according to rules of construction governing general and special, or earlier and later, statutory provisions, I believe our holding in <u>Riley</u> is most naturally explained as recognizing the limited applicability of <u>Thomas</u> to the retroactive application of the criminal code to pre-criminal code offenses conviction for which had not yet become final. In <u>Thomas</u> we found the legislative intent expressed in section 510(1)(f) meaningful only because it had been incorporated in section 103, providing a limited

5

exception to that statute's otherwise express bar to retroactive application of the new code. See Thomas, 525 P.2d at 1137–38. With several notable, but I believe easily explained, exceptions, at the time of our distinction in Riley, we had relied on the rule of Thomas exclusively by applying ameliorative provisions of the comprehensive criminal code for the benefit of acts committed before, but with final sentencing following, its enactment.[2]

¶47    Finally, I object to the majority's discarding of what it understands to be the subsequent counter authority of Macias, McCoy, and Riley as mere dicta. I do not consider the resolution of a case or controversy on one particular ground to be dicta merely because a narrower rule of decision may have been available; but to the extent the majority considers that to be the case, surely the rule of Thomas, if understood as applying to more than ameliorative amendments of the new criminal code, enacted

---

[2] The majority notes our reliance on the rule of Thomas for retroactive application of ameliorative sentencing provisions to post-1972 criminal acts in both People v. Bloom, 577 P.2d 288 (Colo. 1978) and Glazier v. People, 565 P.2d 935 (Colo. 1977). In the latter, we expressly noted that the People neither objected to nor appealed from this retroactive sentencing by the trial court, Glazier 565 P.2d at 936, and in the former, the ameliorative legislation was applied to what we recognized as a meaningless sentence for possession ordered to run concurrently with an identical sentence for sale of the same quantum of drugs, constituting a second conviction for the same offense, Bloom, 577 P.2d at 292, which we have subsequently disapproved altogether as unauthorized by the legislature, see People v. Abiodun, 111 P.3d 462, 468 (Colo. 2005). Although not referenced by the majority, in People v. Litsey, 565 P.2d 1343 (Colo. 1977), and in People v. Renfrow, 564 P.2d 411 (Colo. 1977), we also applied a 1976 amendment to the habitual criminal statute to sentencing for offenses committed before the amendment on the grounds that "[c]learly [the amendment] evidences the intent of the legislature not to be as severe with one whose earlier crimes had occurred in the distant past." Litsey, 565 P.2d at 1344.

6

even before the benefitted defendant was initially sentenced, would seem to be equally, if not less, binding.

¶48     Because I believe the majority creates a new presumption with regard to the retroactive application of criminal statutes, which conflicts with both the legislature's own rules of construction and the prior case law of this court, I respectfully dissent.

I am authorized to state that JUSTICE BOATRIGHT joins in this dissent.