J-S20036-21

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| | : | |
| WARFA AHMED MOHAMED | : | |
| | : | |
| Appellant | : | No. 1284 MDA 2020 |

Appeal from the Judgment of Sentence Entered June 5, 2020
In the Court of Common Pleas of Cumberland County Criminal Division at
No(s):  CP-21-CR-0002662-2018

BEFORE:  NICHOLS, J., KING, J., and MUSMANNO, J.

MEMORANDUM BY MUSMANNO, J.:                    **FILED AUGUST 27, 2021**

Warfa Ahmed Mohamed ("Mohamed") appeals from the judgment of sentence imposed following his conviction of indecent assault.[1]  We affirm in part, vacate in part, and remand for consideration of Mohamed's registration requirements under the revised Subchapter H of the Sex Offender Registration and Notification Act ("SORNA"),[2] consistent with our Supreme Court's holding in ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020).

In its Opinion and Order denying Mohamed's post-sentence Motion, the trial court ably summarized the factual background underlying Mohamed's conviction, which we adopt herein for the purposes of this appeal.  ***See*** Trial Court Opinion and Order, 9/10/20, at 2-11.

---

[1] 18 Pa.C.S.A. § 3126(a)(8).

[2] 42 Pa.C.S.A. §§ 9799.10-9799.42.

Briefly, in January 2018, a child, S.A. (a female born in June 2002), reported to police that Mohamed, a friend of her stepfather, had sexually abused her. On February 4, 2018, police responded to S.A.'s residence following a report that S.A. was contemplating suicide. S.A. informed officers that her suicidal thoughts began when Mohamed started a nonconsensual sexual relationship with her. Police arranged for S.A. to be transported to a hospital for evaluation and treatment. S.A. reported the assaults to a treating physician at the hospital.

S.A. had known Mohamed for four years, and Mohamed had often visited S.A.'s family home to spend time with S.A.'s stepfather. Mohamed acted as a driver for S.A.'s family, after her stepfather was jailed for violating a Protection From Abuse Order. S.A. referred to Mohamed only as "uncle," which was a signifier of respect in S.A.'s family culture.[3] In June 2017, while visiting S.A.'s home, Mohamed went upstairs to S.A.'s bedroom, where he began touching her thighs and breasts. S.A. told him to stop and got up and went into the bathroom. Mohamed followed her, locked the door, and continued groping her. S.A.'s stepfather eventually unlocked the door and kicked Mohamed out of the house. However, S.A. told her stepfather that she was only helping Mohamed find his lighter. S.A.'s mother observed S.A.

_____

[3] S.A. was born in Djibouti. S.A. arrived in the United States in 2011 with her mother and siblings, and moved to Cumberland County in 2013. N.T., 11/5/19, at 29, 32-34.

holding back tears as S.A.'s stepfather questioned S.A. about Mohamed's actions. The incident was eventually reported to police on January 30, 2018, after a family member overheard S.A. telling her cousin what had happened.

S.A. also alleged that in January 2018, Mohamed volunteered to drive S.A. to a viewing for a deceased classmate of S.A. Instead of driving S.A. to the viewing, Mohamed drove her to a park in Mechanicsburg Borough, Cumberland County. When they arrived at the park, Mohamed parked his car, reclined S.A.'s car seat, got on top of her, took off her clothes, and choked her. Mohamed then engaged in sexual intercourse with S.A. and forced S.A. to perform oral sex on him. Mohamed threatened S.A. that if she told anyone what had happened, he would expose the fact that the passports for S.A. and her family had been suspended.

Mohamed was charged with, *inter alia*, the above-referenced offense in relation to the June 2017 assault, and was charged with, *inter alia*, rape by forcible compulsion and statutory sexual assault in relation to the January 2018 assault.[4] During Mohamed's trial beginning on November 5, 2019, the jury heard testimony from S.A.; S.A.'s mother; several of S.A.'s friends; several police officers and detectives; and a nurse practitioner who had examined S.A. Following testimony, the trial court issued instructions to the jury regarding witness credibility, as well as instructions regarding a missing

_____

[4] 18 Pa.C.S.A. §§ 3121(a)(1), 3122.1(b).

- 3 -

witness.[5]  At the conclusion of trial, the jury convicted Mohamed of indecent assault in connection with the June 2017 assault, and acquitted Mohamed of the charges related to the January 2018 assault.

The trial court sentenced Mohamed to serve 45 days to 23 months in the Cumberland County Prison.  Further, Mohamed was classified as a Tier II Offender, and subjected to a registration period of 25 years pursuant to SORNA.  Mohamed filed a timely post-sentence Motion, which the trial court denied.  Mohamed subsequently filed a timely Notice of Appeal, and a court-ordered Pa.R.A.P. 1925(b) Concise Statement of matters complained of on appeal.[6]

Mohamed raises the following questions for our review:

> 1. Whether the Commonwealth presented insufficient evidence to sustain [Mohamed]'s conviction of indecent assault[,] as the testimony was so contradictory on the essential issues that the jury's findings were based on mere conjecture and speculation[?]

---

[5] During the June 2017 assault, an unnamed guest was also present at S.A.'s home.  N.T., 11/5/19, at 92-93.  The trial court instructed the jury that they were authorized to infer that the guest's testimony would have been unfavorable to the prosecution, if the person was available only to the Commonwealth, had special non-cumulative information material to the issue, and if a satisfactory explanation for the failure to call the person did not exist.  N.T., 11/6/19, at 329-30.  Further, S.A.'s stepfather could not be located to testify at trial.  *Id.* at 184-87.

[6] In his Notice of Appeal Mohamed purports to appeal from the September 10, 2020, Order denying his post-sentence Motion.  However, "in a criminal action, appeal properly lies from the judgment of sentence made final by the denial of post-sentence motions." *Commonwealth v. Shamberger*, 788 A.2d 408, 410 n.2 (Pa. Super. 2001).  Accordingly, Mohamed's appeal properly lies from the June 5, 2020, judgment of sentence.

2. Whether the registration requirements of SORNA are unconstitutional and violated [Mohamed]'s rights under the Pennsylvania and United States constitutions[,] in that SORNA denied [Mohamed] procedural due process under Article I and XI of the Pennsylvania Constitution because it created an irrebuttable presumption that those convicted of enumerated offenses "pose a high risk of committing additional sexual offenses[,]" depriving those individuals of the fundamental right to reputation[?]

3. Whether SORNA denied [Mohamed] procedural due process under Article I, Section 1 of the Pennsylvania Constitution because it unlawfully restricts liberty and privacy without notice and an opportunity to be heard[?]

4. Whether SORNA constitutes criminal punishment and therefore violates the separation of powers doctrine[,] because it usurps the exclusive judicial function of imposing a sentence[?]

Brief for Appellant at 5.

Mohamed first argues that the Commonwealth presented insufficient evidence to support his indecent assault conviction. *Id.* at 8-13. Mohamed asserts that S.A.'s testimony was "riddled with inconsistencies," including the dates and times of the assault, and how she got home after the assault. *Id.* at 11, 12. Mohamed asserts that S.A.'s inconsistent testimony required the jury to reach its guilty verdict "by pure surmise and conjecture," thereby creating a verdict unsupported by evidence beyond a reasonable doubt. *Id.* Further, Mohamed claims that the jury's verdict was inconsistent, as the jury had acquitted him of the rape and statutory sexual assault charges. In particular, Mohamed argues that "if the jury accepted [S.A.]'s testimony as false as to one of the incidents, it should have been a complete defense to all of the charges." *Id.* at 12-13.

Mohamed challenges the sufficiency of the evidence.

As a general matter, our standard of review of sufficiency claims requires that we evaluate the record in the light most favorable to the verdict winner giving the prosecution the benefit of all reasonable inferences to be drawn from the evidence. Evidence will be deemed sufficient to support the verdict when it establishes each material element of the crime charged and the commission thereof by the accused, beyond a reasonable doubt. Nevertheless, the Commonwealth need not establish guilt to a mathematical certainty. Any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances.

The Commonwealth may sustain its burden by means of wholly circumstantial evidence. Accordingly, [t]he fact that the evidence establishing a defendant's participation in a crime is circumstantial does not preclude a conviction where the evidence coupled with the reasonable inferences drawn therefrom overcomes the presumption of innocence. Significantly, we may not substitute our judgment for that of the fact finder; thus, so long as the evidence adduced, accepted in the light most favorable to the Commonwealth, demonstrates the respective elements of a defendant's crimes beyond a reasonable doubt, the appellant's convictions will be upheld.

*Commonwealth v. Sebolka*, 205 A.3d 329, 336-37 (Pa. Super. 2019).

Additionally, "a review of the sufficiency of the evidence does not include an assessment of the credibility of the testimony; such a claim goes to the

weight of the evidence."[7] **_Commonwealth v. Gibbs_**, 981 A.2d 274, 281-82 (Pa. Super. 2009). Further, the uncorroborated testimony of the victim alone is legally sufficient to support a verdict, if the jury believes such testimony. **_See Commonwealth v. Johnson_**, 180 A.3d 474, 479 (Pa. Super. 2018).

> [T]he [jury's] individualized assessment of the credibility of the trial evidence is, as a general principle, not to be questioned by an appellate court as part of its review, even if the evidence is conflicting. [C]ourts presume the jury resolved evidentiary disputes reasonably so long as sufficient evidence supports the verdict. [M]ere inconsistency and conflicts in witnesses['] testimony, by itself, will not furnish a basis for an appellate court to reverse a conviction [] on the grounds of evidentiary insufficiency.

**_Commonwealth v. Brown_**, 52 A.3d 1139, 1165 (Pa. 2012) (citations omitted). Rather, the fact-finder's resolution will only be disturbed "in those exceptional instances [] where the evidence is so patently unreliable that the jury was forced to engage in surmise and conjecture in arriving at a verdict based upon that evidence." **_Id._** (citing **_Commonwealth v. Karkaria_**, 625 A.2d 1167, 1170 (Pa. 1993)).

The Crimes Code provides, in relevant part, that

---

[7] In Mohamed's post-sentence Motion, he also alleged that the verdict was against the weight of the evidence based on S.A.'s testimony at trial. Post-Sentence Motion, 6/15/20, at 2 (unpaginated). Mohamed, however, did not preserve a challenge to the weight of the evidence in his Concise Statement. Thus, to the extent that Mohamed's claim challenges the weight of the evidence, such claim is waived. **_See Commonwealth v. Bullock_**, 948 A.2d 818, 823 (Pa. Super. 2008) (stating that an appellant waives any issue not raised in a court-ordered concise statement) (citing **_Commonwealth v. Lord_**, 719 A.2d 306, 308).

[a] person is guilty of indecent assault if the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and [ ] the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

18 Pa.C.S.A. § 3126(a)(8).

In this case, S.A. testified that on one occasion in June 2017, Mohamed visited S.A's stepfather at S.A.'s home. N.T., 11/5/19, at 40. S.A. stated that Mohamed would visit her stepfather routinely; Mohamed knew S.A.; and S.A. would talk to Mohamed about problems she was having in school, when she did not feel comfortable talking to her parents. *Id.* at 45-46.

On the night in question, while S.A. was upstairs in her bedroom watching a movie, Mohamed came upstairs and started "touching [her] thighs, rubbing back and forth[.]" *Id.* at 41. S.A. got up to go to the bathroom, where Mohamed followed her, locked the bathroom door, and continued to touch her thighs and breasts. *Id.* at 41-43. S.A. testified that Mohamed had his pants down and that S.A. could see his underwear, and that she told him to stop. *Id.* at 42-43. S.A. stated that at that point, her stepfather came upstairs and unlocked the bathroom door. *Id.* at 43. When S.A.'s stepfather saw Mohamed and S.A., he ejected Mohamed from the house. *Id.* at 43-45. S.A. indicated that she did not tell either her stepfather or her mother what Mohamed had done out of embarrassment and due to her culture, and instead told them that she was helping Mohamed locate his lighter. *Id.* at 44-45.

S.A. testified that at some point after the incident, when Mohamed was driving S.A. to mosque, Mohamed asked S.A. if she liked what he had done to her. *Id.* at 47-48.

Additionally, S.A.'s mother testified that on the night in question, she observed Mohamed go upstairs to use the restroom. *Id.* at 132-33. S.A.'s mother explained that, after a while, her husband went upstairs, at which time she heard a loud argument taking place. *Id.* at 133. According to S.A.'s mother, when she went upstairs, she heard her husband questioning Mohamed. *Id.* at 133-35. At that time, S.A.'s stepfather, Mohamed, and S.A. were standing outside of the bathroom. *Id.* at 133-34. S.A.'s mother heard Mohamed say that he didn't do anything, and observed S.A. holding back tears. *Id.* at 134-35.

In viewing the record in the light most favorable to the Commonwealth, as the verdict winner, we conclude that the above evidence was sufficient to sustain Mohamed's conviction of indecent assault pursuant to section 2136(a)(8). Additionally, we cannot conclude that S.A.'s testimony was so inherently unreliable that Mohamed's guilty verdict amounted to no more than surmise or conjecture. *See Karkaria*, *supra*. Further, we note that despite any apparent inconsistencies, we permit inconsistent verdicts "in a variety of contexts." *Commonwealth v. Moore*, 103 A.3d 1240, 1246 (Pa. 2014); *see also id.* at 1249 (stating that "juries may issue inconsistent verdicts and [] reviewing courts may not draw factual inferences in relation to the evidence

from a jury's decision to acquit a defendant of a certain offense."). Accordingly, we can grant Mohamed no relief on this claim. *See Sebolka*, *supra*.

We will address Mohamed's final three issues together. First, Mohamed argues that application of SORNA's registration requirements under Subchapter H denied Mohamed his constitutional due process rights. Brief for Appellant at 14-22 (citing *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017)). Second, Mohamed argues that application of SORNA denied him his due process rights, because it unlawfully restricted his liberty and privacy, without notice and the opportunity to be heard. Brief for Appellant at 22-23. Third, Mohamed argues that SORNA's registration requirements constituted "criminal punishment," and, as a result, violated the separation of powers doctrine and functionally imposed an additional criminal sentence. *Id.* at 24-26.

In *Torsilieri*, our Supreme Court addressed Subchapter H, vacated a trial court's order finding it unconstitutional, and remanded the matter to the trial court for additional consideration. *Torsilieri*, 232 A.3d at 572. There, the petitioner presented studies challenging the General Assembly's policy finding that sex offenders pose a high risk of committing additional sexual offenses and asserted that SORNA's irrebuttable presumption of a high risk of recidivism violated due process rights. *Id.* at 574.

However, the *Torsilieri* Court declined to reach the constitutional challenge raised by the petitioner. *Id.* at 596. Instead, the *Torsilieri* Court remanded the matter to the trial court in order to further develop the record to "allow the parties to address whether a consensus has developed to call into question the relevant policy decisions impacting offenders' constitutional rights." *Id.* (footnote omitted). The Court indicated that "the wisdom of a public policy is one for the legislature, and the General Assembly's enactments are entitled to a strong presumption of constitutionality rebuttable only by a demonstration that they clearly, plainly, and palpably violate constitutional requirements." *Id.* (citation omitted). Nevertheless, the Court emphasized that it would "not turn a blind eye to the development of scientific research, especially where such evidence would demonstrate infringement of constitutional rights." *Id.*

Further, in *Commonwealth v. Asher*, 244 A.3d 27 (Pa. Super. 2020), this Court addressed a similar claim challenging Subchapter H. Although the appellant properly preserved the issue in his post-sentence motion, the trial court did not conduct an evidentiary hearing. *See id.* at 32-33. Because of the lack of an evidentiary hearing, the appellant could not admit relevant research or studies into evidence. *Id.* On appeal, this Court, relying on *Torsilieri*, concluded that remand was necessary based on the lack of a factual record to address the appellant's claim. *Asher*, 244 A.3d at 32-33. In particular, the *Asher* Court explained that "although [the appellant]

- 11 -

properly preserved his challenges at sentencing and in post-sentence motions, there [wa]s no factual record. Therefore, in accordance with **Torsilieri**, we vacate[d] and remand[ed] for a hearing at which the parties can present evidence for and against the relevant legislative determinations discussed above." **Id.** at 33.

Here, Mohamed properly preserved his Subchapter H claim in his post-sentence Motion. **See** Post-Sentence Motion, 6/15/20, at 3-4 (unpaginated). However, as in **Asher**, the trial court did not develop an evidentiary record. **See** Order, 7/1/20 (cancelling argument on Mohamed's post-sentence Motion, and directing the parties to submit briefs). Further, we note that Mohamed, in his brief in support of his post-sentence Motion, cited extensively to **Torsilieri**, as well as to various studies and research in support of his position. **See** Defendant's Argument in Support of Post-Sentence Motions, 8/10/20, at 23-29. Therefore, because there is no evidentiary record on which we can properly evaluate Mohamed's claim, we vacate Mohamed's judgment of sentence, and remand for a hearing in accordance with **Torsilieri** and **Asher**. **See Torsilieri**, 232 A.3d at 596; **Asher**, 244 A.3d at 31-33.[8]

---

[8] In its appellate brief, the Commonwealth agrees that Mohamed's SORNA issues necessitate a remand to the trial court for the purposes of conducting an evidentiary hearing in accordance with **Torsilieri**. Commonwealth's Brief at 18-20.

- 12 -

Conviction affirmed. Judgment of sentence vacated and remanded for consideration of Mohamed's registration requirements under Subchapter H of SORNA consistent with *Torsilieri*. Superior Court jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 08/27/2021